PATRIOT RESORTS CORPORATION *vs.* REGISTER OF DEEDS FOR THE COUNTY OF BERKSHIRE, NORTHERN DISTRICT & others.[1]

No. 06-P-725.

Berkshire. September 18, 2007. - January 28, 2008.

Present: BERRY, GREEN, & VUONO, JJ.

*Statute,* Construction. *Register of Deeds. Mortgage,* Assignment.

In an action seeking a judgment declaring that the defendant register of deeds (register) assessed excess recording fees for a single instrument in which the plaintiff assigned a number of mortgage interests to a single assignee, the Superior Court judge erred in determining that the register properly assessed recording fees based on the number of mortgages assigned in that instrument, where the assignment constituted a single "paper" within the meaning of G. L. c. 262, § 38, and a single "instrument" within the meaning of G. L. c. 44B, § 8. [117-121] BERRY, J., dissenting.

CIVIL ACTION commenced in the Superior Court Department on August 16, 2002.

The case was heard by *Mary-Lou Rup*, J., on motions for summary judgment.

*Stanley E. Parese* for the plaintiff.

*James J. Arguin*, Assistant Attorney General, for the defendants.

GREEN, J. At issue is the proper interpretation of G. L. c. 262, § 38, which specifies the fees for recording documents with a registry of deeds.[2] The plaintiff, Patriot Resorts Corporation (Patriot), assigned a number of mortgage interests to a single assignee, under a single instrument of assignment. The defendant register of deeds (register) assessed recording fees based on the

---

[1]Secretary of the Commonwealth, and Treasurer of the Commonwealth.

[2]A related question concerns the application of G. L. c. 44B, § 8, which imposes a surcharge on recording fees, as part of the Community Preservation Act.

number of mortgages assigned. Patriot, contending that the fee should instead have been based on the single instrument of assignment, sought declaratory relief in the Superior Court. A judge of the Superior Court agreed with the register's position, and Patriot appealed. We reverse.

*Background.* Patriot develops and sells so-called time share estates in resort properties. See generally G. L. c. 183B, §§ 1 et seq. Incident to its sales of time share estates, Patriot often accepts payment of a portion of the purchase price by extending a loan to the purchaser; in those transactions the loan is represented by a note, and secured by a mortgage executed in Patriot's favor. After recording a number of such purchase money mortgages, Patriot typically assigns the mortgage interests (and associated notes) to an institutional lender as collateral security for credit extended by such a lender to Patriot.

The fees for recording documents with the register of deeds are set by statute. As in effect at the times relevant to the present case,[3] G. L. c. 262, § 38, as amended through St. 1985, c. 515, provided, in pertinent part, as follows:

> "The fees of registers of deeds, except as otherwise provided, to be paid when the instrument is left for recording, filing or deposit shall be as follows: For entering and recording any paper, certifying the same on the original, and indexing it and for all other duties pertaining thereto, ten dollars for the first four pages. The fee for recording a deed or conveyance shall be twenty-five dollars for the first four pages. The fee for recording a mortgage shall be twenty dollars for the first four pages. If the deed, conveyance, mortgage or other paper contains more than four pages, the rate shall be one dollar for each page after the first four pages.

> . . .

> "For entering any additional marginal reference or refer-

---

[3]By St. 2003, c. 4, § 51, the Legislature rewrote the section, substantially increasing the base fees for recording various types of documents, and eliminating, inter alia, the separate charges for additional pages and additional marginal references.

ences when required, one dollar for each reference."[4,5]

In addition to the basic recording fees, G. L. c. 44B, § 8, inserted by St. 2000, c. 267, § 1, imposes a surcharge, as follows:

> "(a) The fees of the registers of deeds, except as otherwise provided, to be paid when the instrument is left for recording, filing or deposit shall be subject to a surcharge of $20. The fees for so recording, filing or depositing a municipal lien certificate shall be subject to a surcharge of $10. The surcharges shall be imposed for the purposes of community preservation. No surcharge shall apply to a declaration of homestead under chapter 188. No surcharge shall apply to the fees charged for additional pages, photostatic copies, abstract cards, additional square feet for the filing and recording of plans or for additional or required marginal references."[6,7]

On July 17, 2002, Patriot presented to the register for recording an instrument of assignment (assignment) assigning to Liberty Bank a collateral security interest in 169 mortgages that had been granted to Patriot by various time share estate purchasers. The assignment instrument was eight pages in length, including two pages setting forth its substantive terms, a page containing a notarial acknowledgment, and a five-page schedule describing the various mortgages it assigned. The register imposed a total fee (including Community Preservation Act surcharge) of $5,074 for recording the assignment. The register assessed the fee based on his treatment of the assignment as

---

[4]A marginal reference is a written reference entered in the margin of an earlier recorded, related document that refers the reviewer to the book and page of the newly recorded document.

[5]We have omitted from the quoted language the second, third, and fourth paragraphs of the statute (which do not bear on the question presented) as well as the sixth paragraph (which added a cross reference to the surcharge imposed under the Community Preservation Act).

[6]A somewhat different fee schedule applies to instruments affecting land registered under G. L. c. 185. See G. L. c. 262, § 39; G. L. c. 44B, § 8(*b*).

[7]A second surcharge (of five dollars per instrument) is imposed by G. L. c. 9, § 26, to be applied toward modernization of registries of deeds. However, that surcharge became effective on March 15, 2003, and hence did not apply at the time of the recording that gave rise to this action.

constituting 169 separate assignments, with a separate recording fee of $10, and a separate surcharge of $20, imposed on each.[8]

By complaint filed in the Superior Court on August 16, 2002, Patriot sought a declaration that the fee imposed by the register exceeded the proper fee by $4,872.[9] The parties filed cross motions for summary judgment; after hearing, a judge of the Superior Court allowed the register's motion, and denied Patriot's. Patriot filed a timely notice of appeal from the resulting judgment.

*Discussion.* "We interpret a statute according to the intent of the Legislature. *Commonwealth* v. *Galvin*, 388 Mass. 326, 328 (1983). '[T]he primary source of insight into the intent of the Legislature is the language of the statute,' *International Fid. Ins. Co.* v. *Wilson*, 387 Mass. 841, 853 (1983), and that is our starting point. *Simon* v. *State Examiners of Electricians*, 395 Mass. 238, 242 (1985). Statutory language should be given effect consistent with its plain meaning. Where, as here, that language is clear and unambiguous, it is conclusive as to the intent of the Legislature. *Commonwealth* v. *Clerk-Magistrate of the W. Roxbury Div. of the Dist. Court Dep't*, 439 Mass. 352, 355-356 (2003)." *Commissioner of Correction* v. *Superior Ct. Dept. of the Trial Ct.*, 446 Mass. 123, 124 (2006).

Patriot contends, quite correctly in our view, that the assignment was a single "paper," within the meaning of that term in G. L. c. 262, § 38, and a single "instrument," within the meaning of that term in G. L. c. 44B, § 8. Accordingly, the charges for its recording should have included a basic recording fee of $10, a Community Preservation Act surcharge of $20, an additional $4 for the number of pages by which the assignment exceeded four pages, and an additional $168 for the number of additional marginal references the assignment necessitated.[10]

---

[8]The register assessed an additional $4, at $1 per page for each page of the assignment that exceeded the initial four pages.

[9]According to Patriot's complaint, the register should have imposed a total fee of $202, comprised of one recording fee of $10, and one surcharge of $20, on the assignment, an additional $4 on each of the pages of the assignment that exceeded four, and an additional $168 for each marginal reference necessitated by the assignment in excess of the first such notation.

[10]Each mortgage assigned would receive a marginal reference noting the book and page of the assignment. See note 4, *supra*.

In opposition, the register first observes that a court should "not adopt a literal construction of a statute if the consequences of such construction are absurd or unreasonable," *Bates* v. *Director of the Office of Campaign & Political Fin.*, 436 Mass. 144, 165 (2002), quoting from *Attorney Gen.* v. *School Comm. of Essex*, 387 Mass. 326, 336 (1982), particularly where a literal construction "would defeat the aim and object of the legislation." *Lexington* v. *Bedford*, 378 Mass. 562, 570 (1979). The register asserts that the purpose of the recording fees statute is to provide revenues to cover the costs involved in recording documents presented to the register, and that the Legislature accordingly must have intended that the fees imposed for recording particular documents bear a reasonable relationship to the amount of work involved in recording the document. The argument is flawed at two levels. First, accepting for the sake of argument the premise that the fee must correspond in some measure to the amount of work involved in recording a particular document, the statute, as then in effect, by its plain terms attempted to address the concern by increasing the fee for the number of pages in the document and the number of marginal references necessitated by the document. Particularly where, as here, the additional effort associated with recording a document lies principally in the number of marginal references required incident to the recording of an instrument, we see no material disparity between the apparent purpose of the statute and application of the statute in accordance with its terms.[11]

Second, the specified recording fees do not strictly correspond

[11]The register contends that much more additional work is required to index the assignment in accordance with the dictates of G. L. c. 36, § 25, asserting that a separate index entry must record the name of each of the various borrowers on each assigned mortgage. The statute does not so require. Under G. L. c. 36, § 25, the register is required to maintain a grantor and grantee index, identifying as to each recorded instrument the (i) date of reception; (ii) grantor(s); (iii) grantee(s); (iv) book; (v) page; and (vi) town where the land lies. Under an instrument assigning a mortgage, the "grantor" is the assignor of the mortgagee's interest in the mortgage, and the "grantee" is the assignee of that interest. The mortgagor's (or borrower's) interest in the property covered by the mortgage is unaffected by the assignment. The need to trace ownership of the mortgage interest (for, among other purposes, assuring authority to execute a discharge of the mortgage upon its satisfaction) is achieved by means of the marginal references on the mortgage and any assignments thereof.

to the amount of work associated with recording an instrument in any event. The recording of an assignment of mortgage involves no more work than the recording of a mortgage itself, yet under the statute as then in effect, the specified fee for recording an assignment of mortgage was ten dollars, while the fee for recording a mortgage was twenty dollars.[12] We also observe that recording fees collected by the register are not retained by the register but are paid into the General Fund, pursuant to G. L. c. 29, § 2. Accordingly, additional recording fees collected are not available to the register to cover any additional expenses he may incur in performing his required duties in any one or more particular transactions.[13]

The register also reminds us that a court must give substantial deference to the reasonable interpretation of a statute adopted by the administrative agency charged with its enforcement. See *Commerce Ins. Co.* v. *Commissioner of Ins.*, 447 Mass. 478, 481 (2006). However, the principle is " 'one of deference, not abdication,' " and we will not hesitate to overrule an agency interpretation that is unreasonable or arbitrary. *Moot* v. *Department of Envtl. Protection*, 448 Mass. 340, 346 (2007), quoting from *Boston Preservation Alliance, Inc.* v. *Secretary of Envtl. Affairs*, 396 Mass. 489, 498 (1986).

The record includes the affidavit of Richard P. Howe, Jr., the incumbent register of deeds for the northern Middlesex district and a former president of the Massachusetts Registers and Assistant Registers of Deeds Association. In his affidavit, Howe uses the term "multiple document" to describe a document (which, according to Howe, includes the assignment involved in

---

[12]Under the fee schedule currently in effect, see note 3, *supra*, the fee for recording an assignment of mortgage has increased to $50, while the fee for recording a mortgage has increased to $150. We also note that the fact that the Legislature chose in the most recent amendment to eliminate separate charges for additional pages and marginal references weighs against the register's assertion that the Legislature must have intended for fees to correspond to the work involved in recording a particular document.

[13]Surcharges collected under G. L. c. 44B, § 8, are paid into the Community Preservation Fund established under G. L. c. 44B, § 7. Surcharges collected under G. L. c. 9, § 31, from March 15, 2003, through June 30, 2008, see note 7, *supra*, are paid into the Registers Technological Fund established under G. L. c. 29, § 2JJJ; from and after July 1, 2008, such surcharges are to be forwarded to the General Fund.

the present case) that combines "two or more separate functions or transactions together into a single document." Howe further explains that, due to the additional work associated with recording and indexing a document that effects multiple transactions, "it is standard practice for the registries throughout the Commonwealth to assess, pursuant to G. L. c. 262, § 38, a separate recording fee that accurately reflects the work associated with the multiple transactions or functions within the document." However, though the registers' desire to assess fees in proportion to the work involved in recording is perhaps understandable, neither the Howe affidavit, nor the register's brief on appeal, makes any attempt to ground the registers' practice in the fee schedule prescribed by the statute.[14] In construing the statute it is of course the directive of the Legislature, rather than the practice of the registers, with which we are principally concerned.

We return to the point of beginning: an examination of the words of the statute. Black's Law Dictionary 1142 (8th ed. 2004) defines "paper" as "[a]ny written or printed document or instrument." As we have observed, G. L. c. 262, § 38, as then in effect, imposed a recording fee of $10 on any "paper," while imposing higher fees on any "deed or conveyance" or any "mortgage."[15] The statute accordingly treats a "paper" as an object comparable to a "deed" or a "mortgage" for purposes of assessment of a recording fee, albeit in a different class for purposes of determining the amount of the fee. Chapter 36 of the General Laws, which generally describes the duties of the registers concerning the recordation of documents, consistently refers to assignments as "instruments." See, e.g., G. L. c. 36, §§ 20, 21, 23. Moreover, the opening sentence of G. L. c. 262, § 38,

---

[14]The register's argument gains no force from Technical Information Release 00-12, addressing Community Presentation Act Surcharges, issued by the Department of Revenue, which provides that "[i]f multiple recording fees are charged for one document, e.g., the registry charges three recording fees for an instrument assigning three mortgages, a surcharge is due on each separate fee collected." The technical information release does not furnish any interpretive authority for the registers' practice of imposing multiple recording fees on such documents, but simply clarifies that the Community Preservation Act surcharge is to be imposed whenever a separate recording fee is collected.

[15]The differential persists in the current version of the statute, albeit in different amounts.

uses the term "instrument" to refer collectively to the materials that may be left for recording, including any "paper," "deed," or "mortgage." General Laws c. 44B, § 8, similarly employs the term "instrument" to refer to documents presented for recording, on which a recording fee is assessed.

Contrary to the register's characterization of the assignment as comprising multiple assignments, it is a single instrument of assignment, from a single assignor to a single assignee.[16] That it conveys a number of separate assets does not alter its character as a single instrument of conveyance any more than would occur in the case of a deed which conveys a number of discrete parcels of land, or a collateral assignment of leases conveyed incident to the financing of a large shopping center.

There are any number of conceivable methods for the assessment of recording fees on instruments presented to a registry of deeds for recording. The Legislature has adjusted both the manner and amount of such fees through various amendments to the statute since its first enactment in 1795. If the register believes that current conveyancing practice warrants a further refinement of the formula for assessing fees on one or more classes of documents, he is free to suggest to the Legislature an amendment to the statute. However, under the statute as in effect at the time of the transaction involved in the present case, the fees imposed by the register exceeded the fees authorized by the statute.

The judgment of the Superior Court is reversed. The case is remanded to the Superior Court for further proceedings consistent with this opinion, to determine the amount of excess fees collected by the register from Patriot.[17]

*So ordered.*

BERRY, J. (dissenting). The central issue in this case turns on

---

[16]The dissent, without explanation, similarly characterizes the assignment as comprising multiple mortgage assignments, rather than as a single assignment of multiple mortgage interests. See *post* at 123.

[17]In a supplemental complaint filed in the Superior Court, Patriot has identified several other assignment instruments on which it claims it was overcharged, based on the same statutory interpretation by the register.

whether the word "paper" in G. L. c. 262, § 38,[1,2] encompasses
the assignment of a mortgage as a separate legal instrument

[1]For ease of reference in this dissent, and to provide the context in which
the term "paper" appears in G. L. c. 262, § 38, I repeat the pertinent part of
the statute, which also appears in the majority opinion.

> "The fees of registers of deeds, except as otherwise provided, to be
> paid when the instrument is left for recording, filing or deposit shall be
> as follows: *For entering and recording any paper, certifying the same
> on the original, and indexing it and for all other duties pertaining
> thereto*, ten dollars for the first four pages. The fee for recording a deed
> or conveyance shall be twenty-five dollars for the first four pages. The
> fee for recording a mortgage shall be twenty dollars for the first four
> pages. If the deed, conveyance, mortgage or other paper contains more
> than four pages, the rate shall be one dollar for each page after the first
> four pages.

> . . .

> "For entering any additional marginal reference or references when
> required, one dollar for each reference."

(Emphasis added.) G. L. c. 262, § 38, as amended through St. 1985, c. 515.
See also G. L. c. 44B, § 8, quoted in the majority opinion, which imposes a
surcharge pursuant to the Community Preservation Act.

[2]As the majority opinion notes, by St. 2003, c. 4, § 51, the Legislature
rewrote G. L. c. 262, § 38, substantially increasing the base fees for recording
various types of documents, and eliminating, the staircased fees for supplemental
pages and marginal references. As so amended, G. L. c. 268, § 38, provides
as follows:

> "The fees of the registers of deeds, except as otherwise provided, to be
> paid when the instrument is left for recording, filing or deposit shall be
> as follows:

> "*For entering and recording any paper, certifying the same on the
> original, and indexing it and for all other duties pertaining thereto*,
> $50;

> "For recording a declaration of trust, $200;

> "For recording a deed or conveyance, $100;

> "For recording a mortgage, $150;

> "For recording a declaration of homestead, $30;

> "For recording and filing a plan, $50 per sheet; and

> "For all copies of documents, whether copied out of books or gener-
> ated electronically, $1 per page, and all coin operated copy machines
> shall be $.50 per page.

> "The fees of the registers of deeds, except as otherwise provided, to be

memorializing the transfer of a land interest, despite the fact that multiple such mortgage assignments are simultaneously presented to a registry of deeds not in the more traditional form of hard copy mortgage assignment instruments (with separate document by document descriptions of particular mortgage assignments), but instead are presented to the registry in a form in which the mortgage assignment instruments are compressed in a computerized spreadsheet (with only cell upon cell listings of the particular mortgage assignments).

The argument advanced by the plaintiff, Patriot Resorts Corp. (Patriot), and accepted by the majority, is that there was but one paper filed — the covering document affixed to the computer spread sheet. According to Patriot's theory, the 169 mortgage assignments listed in spreadsheet cells were merely an appendage, with no recording fee significance under the statutes. On this point, Patriot contends, and the majority accepts, that somehow the cover document "bundled" everything, so that only $202 was due in recording fees and surcharges under G. L. c. 262, § 38, as then in effect, and G. L. c. 44B, § 8. In contrast, the registry of deeds charged Patriot a total fee of $5,074 for recording and processing the 169 assignments of mortgage.

I reject the construction advanced by Patriot. Simply because Patriot devised a computer model that produced a spreadsheet containing all of the assignments to a single assignee as a "virtual" filing of multiple mortgage assignments and presented this to the registry of deeds, instead of tendering to the registry hard copy pages of paper instruments memorializing each of the mortgage assignments does not, in law, change the nature of the subject land transactions as instruments, that is "papers" of independent legal significance transferring rights in land and to be recorded as "papers" spread upon the public land title system in our registries of deed under G. L. c. 262, § 38.

paid when the instrument is left for recording, filing or deposit, shall be subject to a surcharge under section 8 of chapter 44B."

As is obvious from a comparison of the prior version of G. L. c. 262, § 38, at issue in this case (because all the recording events preceded the 2003 amendment), and the 2003 amendment to G. L. c. 262, § 38, notwithstanding the amendment, the issue of what is a "paper" subject to the enumerated fees remains.

Nor does submission of a computer-generated spreadsheet, in fact, change the nature, or amount, of necessary work by the registry staff incident to the indexing, cross-referencing, and recording of the assignment of multiple mortgages. Indeed, as shall be further described herein, the summary judgment record establishes that, irrespective of which way the assignments of mortgage were presented to the registry of deeds — either by hard copy paper instruments, or in a compressed multitransaction computer-generated paper spreadsheet — the same amount of administrative work by registry personnel is required. To use the words appearing in G. L. c. 262, § 38, the same registry work and same "duties pertain[]" to indexing and cross-referencing of mortgage title references, to achieve the final recording of the multiple mortgage assignments in the indexes and land books of the registry. The recovery of revenues arising out of the work of the registries of deeds is precisely the reason that G. L. c. 262, § 38, was enacted. As was stated in the 1971 emergency preamble to an amendment to this recording fee statute, the purpose is to "provide forthwith for increased revenue for the commonwealth and the various counties by increasing certain fees and charges of the . . . registers of deeds." St. 1971, c. 880.

For these reasons, I believe each singular assignment of a mortgage — albeit purportedly "bundled" in a covering document or documents, or, as in this case, "bundled" and compressed in the computer-generated cells of a spreadsheet document — constitutes a "paper" subject to the recordation and surcharge fees imposed by G. L. c. 262, § 38, and G. L. c. 44B, § 8. Therefore, I respectfully dissent.

1. *Procedural and summary judgment record background.* According to the summary judgment record, this case involves three sets of papers transferring rights in land, (a) 169 "Time-Share Estate Warranty Deeds," (b) 169 mortgages, and (c) 169 assignments of the aforesaid mortgages. On July 17, 2002, Patriot presented the registry with 169 separate instruments or "papers" for each of the warranty and mortgage deeds in classes (a) and (b), thereby filing 238 "papers" subject to the G. L. c. 262, § 38, recording fees. For the mortgage assignments, however, Patriot devised a different filing format. Patriot pre-

sented only a covering document of two pages, bearing the caption "Patriot Resorts Corporation Collateral Assignment of Mortgages to Liberty Bank," to which was attached a five-page spreadsheet. The attached spreadsheet listed the 169 assignments of mortgage in descending cells, and, then, across the pages in nine horizontal cells listed information about the mortgage assignments, including, but not limited to, the mortgagor's name, the unit purchased by each warranty deed and the amount of the mortgage financed and to be assigned. The covering two-page document, after setting forth generic legal language for a mortgage assignment, then goes on to state that the mortgage assignments set forth in the affixed cells of the spreadsheet are "incorporated herein by reference."

Capturing the work entailed and the duties undertaken by the registry of deeds to record the 169 mortgage assignments submitted in Patriot's computer cell chart, the Superior Court judge issued a thoughtful and comprehensive memorandum of analysis and distillation of the summary judgment record. With respect to the mortgage assignments, the judge wrote in pertinent part as follows:

> "Upon receipt, Registry personnel entered the assignment into the recording cash register, thereby assigning the document a recording time and date, book, page, and document number. Registry personnel then manually imprinted each page of the document by use of a book and page stamping machine. The corresponding book and page number of each of the 169 mortgage deeds was typed onto the Schedule "A" of the assignment [filed by Patriot]. . . .

> "Registry personnel next extracted the data from the assignment and manually entered into the Registry's computer database the following information for each assignment: assignor (Patriot), assignee (Liberty Bank), mortgagor (each of the 169 individuals), property address or unit number for each of the 169 mortgaged properties, and the book and page number of each of the 169 mortgages. This process required 169 separate entries for each of the 169 mortgages. The defendants assert that the process requires great accuracy and caution and, as a result, is time-consuming. . . .

"Next, Registry personnel proofread all the information entered into the computer database. Following proofreading, each of the 169 mortgages was marginally referenced by stamping the language "See Assignment Page ____ Page ____" and then hand writing the specific assignment book number and page for each of the 169 mortgages. Registry personnel then sent the assignment to the scanning/filming department where a photographic image of the assignment was taken and stored in the database for public viewing. The pages were printed from the scanned images and then manually compared with their original counterparts to insure accuracy. Finally, Registry personnel microfilmed the assignment for document preservation purposes."[3]

According to the affidavit of Richard P. Howe, Jr.,[4] when a

---

[3]Following the issuance of the Superior Court judge's decision, an error was discovered in the processing of the 169 mortgages when first presented to the registry by Patriot. The error related to the indexing of the names of the assignor, assignee, and individual property owner(s), all of which were not correctly entered by the registry staff, for all of the 169 mortgage assignments. Although it was believed that the borrowers' names for each of the mortgage assignments was entered into the computer database, the computer in fact only accepted ninety-nine names. Additionally, Patriot had included only one of the borrowers' names for each assignment even though many of the assigned mortgages involved more than one borrower. The registry contacted Patriot, which did not object to omissions in the index as long as book and page numbers were entered onto Schedule A and the copy of the mortgages appearing in the registry books contained a reference to the assignment. Evidently, the registry agreed to this practice, because many names were not in the database. After the error was corrected, a supplemental affidavit was filed with this court by joint motion. According to the register's amended and supplemental affidavit, the error was corrected as follows: "[T]he Registry corrected the index and entered the information concerning each property owner/borrower and the property's address into the computer index so that every assignment is separately indexed. This process has been completed for all transactions filed by Patriot and included in this action."

The original error does not affect the above description taken from the Superior Court judge's memorandum, nor does it affect the analysis set forth herein. This is because with the corrected indexing (which is the standard indexing practice, and which by inadvertence was not done in the original processing) all of the work described above in the Superior Court judge's description was done, yielding the recording fees imposed by the registry for the assignment of mortgages, which fees are the subject of this appeal.

[4]Howe is the register of deeds for the Middlesex North Registry of Deeds and a past president of the Massachusetts Registers and Assistant Registers of Deeds Association.

document is submitted to a registry which combines two or more land transactions, the registry refers to the filing as a "multiple document." The Patriot spreadsheet is a quintessential virtual model of this kind of a multiple document, with embedded multiple transactions. Such a multiple transaction document requires the registry staff to unwind — to use the majority's term, to un-bundle — the transactions, so that each separate land transaction listed in the multiple transaction document must be separately processed, indexed, cross-referenced and recorded. These registry duties, in effect, multiply (here exponentially by 169 times) the work that must be performed by the registry staff for a single paper instrument. Given the extra work entailed, Howe states that "[i]t is standard practice for the registries throughout the Commonwealth to assess, pursuant to G. L. c. 262, § 38, a separate recording fee that accurately reflects the work associated with the multiple transactions or functions within a document." To this end, both Howe and the defendant register aver in their affidavits that the fees charged Patriot by the Northern Berkshire registry under G. L. c. 262, § 38, and G. L. c. 44B, § 8, were standard fees for multiple transaction imposed generally by the registries in the Commonwealth.[5] (The two registers' interpretation and application of G. L. c. 262, § 38, on the fees to be imposed were endorsed in an affidavit by the director of the division of the registry of deeds within the Secretary of State's office consistent with that office's interpretation of the statute.)

Here G. L. 262, § 38, appears to embody the purpose of cost recovery by the phrase "for all other duties pertaining thereto." The catalog of "other duties" or additional work imposed by the Patriot filing, as found by the trial judge, appears to be voluminous and to approximate 168 times the amount of work required for a single filing far more closely than it resembles a single filing with merely 168 incremental "marginal references" which the majority suggests would yield registry fees of only $1 per marginal reference. See *ante* at 117.[6] Instead, I believe the word "fee" in § 38 should be deemed to carry its

[5]The registers also cited the Department of Revenue's Technical Information Release, TIR 00-12.

[6]There are two problems at least with this reliance as marginal references in

usual meaning and purpose, i.e., that the government is entitled to a reasonably proportionate recovery of the genuine cost of the work or duties required by the service requested by the payor. See *Robinson* v. *Secretary of Admin.*, 12 Mass. App. Ct. 441, 445-448 (1981) (the character of a governmental fee is in the recovery of reasonable costs of the governmental service rendered to the fee payor and the entitlement of the government to such revenues). Thus, I read § 38 as authorizing the registry to recover the cost of the filing of 169 "papers" of assignments which reflect the genuinely proportionate increase of work and duties imposed on the registry by the Patriot filing. Here, the Patriot consolidated filing increased the duties or work of the registry, and generated a proportionately greater benefit for the payor in that Patriot achieves (without paying therefor) the benefit of 169 mortgage assignments, and not merely one, not withstanding that the Patriot filing imposes a disproportionately greater burden, and reaps a disproportionately greater benefit, than a single submission of just one "paper."

2. *Principles of statutory construction.* Given the Legislature's clear message and expression of intent the purpose underlying G. L. c. 262, § 38, is to "recover revenue for the Commonwealth and the various counties by increasing certain fees and charges of the . . . Registers of Deeds," St. 1971, c. 880, I would look to the following principle of statutory construction. "The general and familiar rule is that a statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated." *Phillips* v. *Pembroke Real Estate, Inc.*, 443 Mass, 110, 114 (2004), quoting from *Industrial Fin. Corp.* v. *State Tax Commn.*, 367 Mass. 360, 364 (1975).

The majority, however, cites differing principles of statutory construction to support its interpretation of G. L. c. 262, § 8, including, the majority writes, that " '[s]tatutory language should

the majority. First, a marginal reference is not a recorded land instrument. Second, the fees for marginal references disappear in the 2003 amendment to the statute. See note 3 in majority and note 2 in dissent.

be given effect consistent with its plain meaning.'. . . Where, as here, that language is clear and unambiguous, it is conclusive as to the intent of the Legislature." *Commonwealth* v. *Clerk-Magistrate of the W. Roxbury Div. of the Dist. Ct. Dept.*, 439 Mass. 352, 355-356 (2003), quoting from *Sullivan* v. *Brookline*, 435 Mass. 353, 360 (2001). Therefore, contrary to the majority, I do not see this canon of statutory construction as pertinent because I do not think that a "plain meaning" on the face of § 8, nor the term "paper" in § 8, is "clear and unambiguous."

In any event, I rely on the principle that, "[w]hen rules of statutory construction produce conflicting results, we must discern, as closely as possible, what the Legislature intended. See *Helvering* v. *Stockholms Enskilda Bank*, 293 U.S. 84, 89 (1934) (canons of statutory construction apply to ascertain meaning of statute, but if one canon does not effectuate purpose of statute as whole, it yields to "the wider view in order that the will of the legislature shall not fail"); *Commonwealth* v. *Dale D.*, 431 Mass. 757, 760-761 (2000), and cases cited." *Commonwealth* v. *Russ R.*, 433 Mass. 515, 521 (2001). Here the legislative intent for fee collection under G. L. c 262, § 38, to recover revenues for the duties undertaken by the registries of deeds is beyond question.

3. *Conclusion.* To interpret G. L. c. 262, § 38, as Patriot submits (and the majority accepts), would be in direct conflict with the legislative intent of recovering costs and revenue associated with recording transactions transferring interests in land and affecting the chain of title as set forth in the books and records of the Commonwealth's registries of deeds.[7] Furthermore, such a reading would allow parties, like Patriot, to record multiple mortgage assignments for the cost of recording one, and would thereby reduce the revenue collection which was the legislative intent of the law.

For these reasons, I would affirm the entry of summary judgment for the defendants.

---

[7]The same revenue reduction, notwithstanding additional recordation work, would also affect G. L. c. 44B, § 8. Such surcharges are directed to cities and towns "for the purposes of community preservation" under G. L. c. 44B, § 8.