APPEALS COURT 
 
 NIAL LUU vs. FALLON SERVICE, INC., & another[1]

 
 Docket:
 23-P-340
 
 
 Dates:
 October 7, 2024 - January 30, 2025
 
 
 Present:
 Blake, Ditkoff, & D'Angelo, JJ.
 
 
 County:
 Worcester
 

 
 Keywords:
 Employment, Termination, Retaliation. Emotional Distress. Ambulance Worker. Workers' Compensation Act, Exclusivity provision, Serious and wilful misconduct of employer. Statute, Construction. Public Policy. Practice, Civil, Judgment on the pleadings.
 
 

       Civil action commenced in the Superior
Court Department on December 27, 2021. 
      The case was heard by J. Gavin Reardon,
Jr., J., on a motion for judgment on the pleadings. 
      Nial Luu, pro se.
      Timothy O. Egan for the defendants.
      DITKOFF, J.  The plaintiff, Nial Luu, filed a complaint in
the Superior Court alleging whistleblower, wrongful termination, and tort
claims against Fallon Service, Inc. (Fallon), and its vice-president, Kevin
Mont, arising from his termination as an emergency medical technician (EMT)
after he photographed an injured patient and used that photograph to report
alleged medical misconduct by Fallon to the Office of Emergency Medical
Services (OEMS).  A judge dismissed the
complaint for failure to state a claim. 
Concluding that G. L. c. 149, § 187 (b), prohibits
retaliation by an ambulance service against an EMT employed by it for reporting
medical misconduct to the government, we reverse the dismissal of the
whistleblower claim.  Further concluding
that, based on the arguments raised in the Superior Court, the judge properly
dismissed the other counts, we otherwise affirm.
      1. 
Background.[2]  On November 30,
2019, the plaintiff, an EMT employed by Fallon, responded to a call at
Encompass Health Rehabilitation Hospital to transport a patient experiencing an
altered mental status to a hospital.  The
plaintiff and his partner placed the patient in the ambulance.  The partner remained in the back of the
ambulance with the patient, where he was supposed to provide care to the
patient, while the plaintiff drove the ambulance to the hospital.  The plaintiff alleges that he witnessed his
partner on his cell phone and neglecting to provide care to the patient as they
traveled.
      Upon arrival at the hospital, the
plaintiff became aware of a new hemorrhage wound on the patient's arm.  The plaintiff questioned his partner about
how the injury resulted, but the partner was not able to provide an
explanation.  Believing that the injury
was a result of his partner's misconduct and neglect of the patient, the
plaintiff used his personal cell phone to take photographs and one video
recording of the patient's arm injury prior to taking the patient into the
hospital.
      The plaintiff reported the incident to his
field supervisor that same day and showed her the photographs and video
recording.  She praised the plaintiff and
requested that he forward the images to her. 
The plaintiff did so on December 4, 2019.  This was the last that the plaintiff heard
about the incident from his supervisor, despite numerous attempts to follow up
on the status of the report.
      Thirty days later, the plaintiff still had
not heard anything about the report from his supervisor or otherwise.  Despite this, he experienced a change in his
job duties during this period which he believed was a result of his reporting
the incident.  Whereas the plaintiff had
previously worked in the field providing EMT care, his job duties now included
sweeping, mopping, and sanitizing the station and paramedic trucks -- duties
usually reserved for more junior trainees. 
The plaintiff rarely, if ever, was asked to do these tasks prior to his
reporting the incident to his supervisor.
      On January 8, 2020, the plaintiff met with
Fallon's vice-president, human resources director, and senior
vice-president.  These individuals
notified the plaintiff that his possession of the images was in violation of company
policy and instructed him to delete the photographs and video recording.  The plaintiff, however, believed that he was
required to file a report with OEMS if Fallon did not pursue an internal
investigation.  The plaintiff
subsequently filed a report with OEMS on January 14.
      On January 17, 2020, the plaintiff again
met with Fallon's vice-president, at which time he deleted the images.  Nonetheless, Fallon terminated the plaintiff,
explaining in a letter that he was terminated for failing to "comply with
company policy FP-247" by not deleting the images at the direction of his
superiors.
      The plaintiff filed a complaint in the
Superior Court against Fallon and Fallon's vice-president for a whistleblower
violation (count 1), wrongful termination in violation of public policy
(count 2), and negligent infliction of emotional distress (count 3).[3]  The complaint labeled the whistleblower count
as falling under G. L. c. 149, § 185 (b) (3).
      The defendants moved for judgment on the
pleadings.  Both sides briefed the
whistleblower claim under G. L. c. 149, § 185 (b) (3),
and accepted that the statute applied to Fallon.  (In fact, it applies only to governmental
entities, G. L. c. 149, § 185 [a] [2].)  In ruling, the judge sua sponte raised the
inapplicability of G. L. c. 149, § 185 (b) (3), to
Fallon and dismissed on that basis.  The
judge also found that the termination did not violate public policy and that
the tort claim was barred by the exclusivity provisions of the workers'
compensation act, G. L. c. 152, § 26.
      The plaintiff filed a prompt motion for
relief from judgment under Mass. R. Civ. P. 60 (b), 365 Mass. 828 (1974),
arguing that the whistleblower claim falls under G. L. c. 149,
§ 187 (b), the statute prohibiting retaliation against whistleblowers
in the medical context, and suggesting that the complaint could be amended to
change the label on the whistleblower count, if necessary.  The judge denied the motion, concluding that
the plaintiff had not shown excusable neglect and that any amendment would be
futile because G. L. c. 149, § 187, did not apply to the
plaintiff either.  This appeal followed.
      2. 
Standard of review.  "A
motion for judgment on the pleadings under Mass. R. Civ. P. 12 (c) is
'actually a motion to dismiss . . . [that] argues that the complaint
fails to state a claim upon which relief can be granted.'"  Mullins v. Corcoran, 488 Mass. 275, 281
(2021), quoting Jarosz v. Palmer, 436 Mass. 526, 529 (2002).  "We review the allowance of a motion for
judgment on the pleadings under Mass. R. Civ. P. 12 (c) . . . de
novo."  C.M. v. Commissioner of the
Dep't of Children & Families, 487 Mass. 639, 646 (2021), quoting Marchese
v. Boston Redev. Auth., 483 Mass. 149, 156 (2019).  "We draw our facts from the well pleaded
allegations of the complaint and the admissions or failures of denial presented
by the answer."  Ridgeley Mgt. Corp.
v. Planning Bd. of Gosnold, 82 Mass. App. Ct. 793, 804 (2012).  To survive a motion to dismiss, the plaintiff
must present factual allegations that rise above the level of speculation, and
plausibly suggest an entitlement to relief. 
See Cournoyer v. Department of State Police, 93 Mass. App. Ct. 90, 91
(2018).
      3. 
Scope of the medical whistleblower statute.  General Laws c. 149, § 187, sets
forth a statutory scheme that prohibits health care facilities from terminating
or otherwise retaliating against health care providers who report certain forms
of believed misconduct to supervisors or public authorities.[4]  The parties agree that Fallon is a health
care facility.[5]  They disagree whether
the plaintiff, an EMT, qualifies as a health care provider under the statutory
definition.
      "Our primary duty in interpreting a
statute is 'to effectuate the intent of the Legislature in enacting
it.'"  Commonwealth v. Sabin, 104
Mass. App. Ct. 303, 305 (2024), quoting Commonwealth v. Sousa, 88 Mass. App.
Ct. 47, 49 (2015).  "The language of
the statute is the starting point for all questions of statutory
interpretation."  Sabin, supra,
quoting Bank of N.Y. Mellon v. Morin, 96 Mass. App. Ct. 503, 507 (2019).  "Statutory language should be given
effect consistent with its plain meaning. 
Where . . . that language is clear and unambiguous, it is
conclusive as to the intent of the Legislature."  Bank of N.Y. Mellon, supra, quoting Patriot
Resorts Corp. v. Register of Deeds for the County of Berkshire, N. Dist., 71
Mass. App. Ct. 114, 117 (2008).
      Under G. L. c. 149,
§ 187 (a), a "health care provider" is 
"an
individual who is a licensed health care provider under the provisions of
chapter 112 including, but not limited to, registered nurses, licensed
practical nurses, physicians, physician assistants, chiropractors, dentists,
occupational therapists, physical therapists, optometrists, pharmacists,
podiatrists, psychologists and social workers or any other health care provider
who performs or has performed health care related services for and under the
control of a health care facility for care-related services."
The plaintiff
here falls squarely within "any other health care provider who performs or
has performed health care related services for and under the control of a
health care facility for care-related services."  G. L. c. 149,
§ 187 (a).  As an EMT employed
by Fallon, the plaintiff performed care-related services for and under the
control of Fallon, a health care facility, including driving an ambulance and
providing patient care in transport. 
During the incident in question, the plaintiff responded to a call at a
rehabilitation hospital for a patient experiencing a medical emergency.  The plaintiff was responsible for driving the
ambulance as his partner provided medical care to the patient in the
vehicle.  In each of these tasks, the
plaintiff interacted directly with the patient, who required immediate health
care service.  This falls within the
patient care that G. L. c. 149, § 187, was designed to
safeguard.
      We are not persuaded by Fallon's argument
that Perez v. Bay State Ambulance & Hosp. Rental Serv., Inc., 413 Mass. 670
(1992), requires a different result.  In
Perez, the Supreme Judicial Court determined that the definition of
"health care provider" in G. L. c. 231, § 60B, the
medical malpractice tribunal statute, did not include EMTs.  Perez, supra at 675-676.  General Laws c. 231, § 60B, states,

"For the
purposes of this section, a provider of health care shall mean a person,
corporation, facility or institution licensed by the commonwealth to provide
health care or professional services as a physician, hospital, clinic or
nursing home, dentist, registered or licensed nurse, optometrist, podiatrist,
chiropractor, physical therapist, psychologist, social worker, or
acupuncturist, or an officer, employee or agent thereof acting in the course
and scope of his employment" (emphasis added).  
The Supreme
Judicial Court held that, because EMTs are not specifically enumerated within
the Legislature's list of "provider[s] of health care," G. L.
c. 231, § 60B, did not apply. 
Perez, supra.  This circumscribed
definition does not bear on the meaning of the open-ended phrase "any
other health care provider who performs or has performed health care related
services for and under the control of a health care facility for care-related
services" that appears in the medical whistleblower statute, G. L.
c. 149, § 187 (a).
      It is unsurprising that G. L.
c. 149, § 187 (a), incorporates expansive phrasing not found in
G. L. c. 231, § 60B, such as "including, but not limited
to" and "or any other health care provider," given its
difference in purpose.  General Laws
c. 231, § 60B, was enacted to establish medical tribunals to
"guarantee the continued availability of medical malpractice
insurance" by "discourag[ing] frivolous claims whose defense would
tend to increase premium charges for medical malpractice insurance."  Lane v. Winchester Hosp., 101 Mass. App. Ct.
74, 77 (2022), quoting Brodie v. Gardner Pierce Nursing & Rest Home, Inc.,
9 Mass. App. Ct. 639, 641 (1980).  In
contrast, G. L. c. 149, § 187, was "designed to safeguard
patient care by protecting the rights of health care providers who expose
deficiencies in care that violate laws or regulations or professional standards
that endanger public health." 
Commodore v. Genesis Health Ventures, Inc., 63 Mass. App. Ct. 57, 66
(2005).  The number of individuals who
require protection for reporting misconduct to supervisors or public
authorities exceeds those whose duties expose them to liability for medical
malpractice.  As such, there is nothing
odd in the notion that the scope and coverage of "health care
providers" protected under G. L. c. 149, § 187, is more
expansive than those "health care providers" included in G. L.
c. 231, § 60B.
      To be sure, the complaint wrongly labeled
the whistleblower count as a "violation of G.L. c.149
§ 185(b)(3)."  Massachusetts
Rule of Civil Procedure 8 (a), 365 Mass. 749 (1974), however, "does not
require a plaintiff to even allege the correct legal theory if the facts as
alleged entitle him to any form of relief."  Windross v. Village Automotive Group, Inc.,
71 Mass. App. Ct. 861, 867 n.4 (2008). 
Accord Jones v. Boykan, 464 Mass. 285, 288 (2013); Tetrault v. Mahoney,
Hawkes & Goldings, 425 Mass. 456, 463 (1997).  Where the complaint made out a cognizable
whistleblower claim under G. L. c. 149, § 187 (b), but
cited the wrong statute, its dismissal for failure to state a claim was in
error.
      To be sure, the plaintiff did not invoke
G. L. c. 149, § 187 (b), in opposing the defendants' motion
for dismissal.  Usually, an argument not
raised in the Superior Court is waived on appeal.  See K & K Dev., Inc. v. Andrews, 103
Mass. App. Ct. 338, 350 n.22 (2023). 
Here, however, the reason why the plaintiff did not raise that argument
is that the defendants never challenged -- and, indeed, accepted -- that
G. L. c. 149, § 185 (b) (3), applied to Fallon and the
plaintiff.  Although the judge was
entitled to raise the inapplicability of that statute sua sponte, the plaintiff
was entitled to notice of this possible, unbriefed ground for dismissal and to
an opportunity to respond with the argument that the complaint also stated a
claim under G. L. c. 149, § 187 (b).  We cannot attribute waiver to the plaintiff's
failure to anticipate and preemptively respond to the judge's sua sponte ground
for dismissal.  Accordingly, the
whistleblower count should not have been dismissed.
      4. 
Termination in violation of a recognized public policy.  "As an exception to the general rule
that an employer may terminate an at-will employee at any time with or without
cause, we have recognized that an at-will employee has a cause of action for
wrongful termination only if the termination violates a clearly established
public policy."  Barbuto v.
Advantage Sales & Mktg., LLC, 477 Mass. 456, 471 (2017), quoting King v.
Driscoll, 418 Mass. 576, 582 (1994), S.C., 424 Mass. 1 (1996).  "[T]he public policy exception to
at-will employment has been recognized 'for asserting a legally guaranteed
right (e.g., filing a worker's compensation claim), for doing what the law
requires (e.g., serving on a jury), or for refusing to do that which the law
forbids (e.g., committing perjury).'" 
Meehan v. Medical Info. Tech., Inc., 488 Mass. 730, 733 (2021), quoting
Smith-Pfeffer v. Superintendent of the Walter E. Fernald State Sch., 404 Mass.
145, 149-150 (1989).  The law recognizes
a fourth category to the exception, for "performing important public
deeds, even though the law does not absolutely require the performance of such
a deed."  Meehan, supra, quoting
Flesner v. Technical Communications Corp., 410 Mass. 805, 810-811 (1991).
      The only argument made by the plaintiff in
the Superior Court was that "M.G.L. c. 111, § 72G required
Mr. Luu to create a detailed patient neglect report, and his termination,
as a result of the contents of his report, is a direct violation of the
statute."  This section, however,
did not impose an obligation on either the plaintiff or Fallon.  General Laws c. 111, § 72G, imposes
a duty on an expansive list of medical and nonmedical persons[6] (and creates a
right for "any other person") to report abuse, mistreatment, neglect,
or misappropriation committed against "an individual who receives health,
homemaker or hospice services at home from an individual employed by a home
health agency or a hospice program" or a person "who resides in a
long term care facility." 
G. L. c. 111, §§ 72F, 72G, first & second pars.  Here, the complaint does not allege that the
patient was at home at the time of the injury and, indeed, alleges that the
patient was being cared for by another EMT working for an ambulance
service.  Accordingly, this statute
provided no duty for the plaintiff to report the injury and created no public
policy against his termination.
      We do not suggest that there is no other
basis in public policy to forbid the termination of an EMT because he reported
an injury to a patient to the government. 
(Indeed, as stated, G. L. c. 149, § 187 [b], appears
to forbid just that.)  Here, however, the
defendants specifically argued that there was no basis in public policy to
forbid the plaintiff's termination, and the plaintiff raised only G. L.
c. 111, § 72G, as a basis for finding such a public policy.  When given notice, an appellant may not raise
on appeal grounds for opposing the motion to dismiss that were not raised in
the Superior Court.  See Slive & Hanna,
Inc. v. Massachusetts Comm'n Against Discrimination, 100 Mass. App. Ct. 432, 441
n.17 (2021).  Accordingly, we have no
cause to disturb the dismissal of this count.
      5. 
Exclusivity of the workers' compensation act.  "The [workers' compensation act]
provides the exclusive remedy for claims brought by an injured employee against
an employer."  Meehan v. Lazer Spot,
Inc., 104 Mass. App. Ct. 690, 692 (2024), quoting Molina v. State Garden, Inc.,
88 Mass. App. Ct. 173, 178 (2015). 
"Under [the exclusivity provision], an injury is compensable where
the plaintiff is an employee who suffers a 'personal injury' that arises 'out
of and in the course of his employment.'" 
Saab v. Massachusetts CVS Pharmacy, LLC, 452 Mass. 564, 619-620 (2008),
quoting Green v. Wyman-Gordon Co., 422 Mass. 551, 558 (1996).  "Claims for negligence, gross negligence,
and even wilful misconduct by the employer, whatever the genesis, are all
covered under the exclusive remedy provision of the act."  Estate of Moulton v. Puopolo, 467 Mass. 478,
490 (2014).
      The plaintiff argues that his claim for
negligent infliction of emotional distress is not barred because "'serious
and willful misconduct' by a supervisor or employer is an exception to the
exclusivity provision of the Workers' Compensation Act and . . . Luu
is entitled to a claim under Chapter 152 Section 28."  General Laws c. 152, § 28, however,
does not negate the exclusivity of workers' compensation, but merely increases
the recovery obtained through workers' compensation.[7]  See, e.g., CNA Ins. Cos. v. Sliski, 433 Mass.
491, 494-495 (2001) ("A worker who is injured by the 'serious and wilful
misconduct' of an employer must forgo the recovery of tort damages that would
likely be far more substantial and a common-law claim with a greater likelihood
of success than his recovery or claim could be for injuries resulting from an
employer's mere negligent conduct"); Drumm's Case, 74 Mass. App. Ct. 38,
41 (2009) ("The 'serious and wilful misconduct' . . . lays the
foundation for double compensation under § 28 . . .").
      6. 
Conclusion.  So much of the
judgment as dismissed count 1 is reversed. 
The judgment is otherwise affirmed. 
The denial of the motion for relief from judgment is affirmed.[8]
So ordered.

footnotes

[1] Kevin Mont.

[2] "We
summarize the facts alleged in the complaint, which we accept as true in
reviewing the allowance of the motion to dismiss, and supplement those facts
with the procedural history . . . ." 
SurTan Mfg. Co. v. Flagship Ins. Agency, Inc., 102 Mass. App. Ct. 342,
343 (2023).

[3] The plaintiff
also proceeded against the vice-president for intentional interference with
contractual relations.  The plaintiff
raises no issue concerning the dismissal of this count in his brief, and thus
it is not before us.

[4] Specifically,
G. L. c. 149, § 187 (b), provides the following:  
"A health
care facility shall not refuse to hire, terminate a contractual agreement with
or take any retaliatory action against a health care provider because the
health care provider does any of the following:
"(1)
discloses or threatens to disclose to a manager or to a public body an
activity, policy or practice of the health care facility or of another health
care facility with whom the health care provider's health care facility has a
business relationship, that the health care provider reasonably believes is in
violation of a law or rule or regulation promulgated pursuant to law or
violation of professional standards of practice which the health care provider
reasonably believes poses a risk to public health;
"(2)
provides information to or testifies before any public body conducting an
investigation, hearing or inquiry into any violation of a law, or rule or
regulation promulgated pursuant to law or activity, policy or professional
standards of practice of a health care provider, by the health care facility or
by another health care facility with whom the health care provider's health
care facility has a business relationship, which the health care provider
reasonably believes poses a risk to public health;
"(3) objects
to or refuses to participate in any activity, policy or practice of the health
care facility or of another health care facility with whom the health care
provider's health care facility has a business relationship which the health
care provider reasonably believes is in violation of a law or rule or
regulation promulgated pursuant to law or violation of professional standards
of practice which the health care provider reasonably believes poses a risk to
public health; or
"(4)
participates in any committee or peer review process, files a report or a
complaint, or an incident report discussing allegations of unsafe, dangerous or
potentially dangerous care."

[5] The statutory
definition of "health care facility" is    
"an
individual, partnership, association, corporation or trust or any person or
group of persons that employs health care providers, including any hospital,
clinic, convalescent or nursing home, charitable home for the aged, community
health agency, pharmacy or other provider of health care services licensed, or
subject to licensing by, or operated by, the department of public health; any
facility as defined in section 3 of chapter 111B; any private, county or
municipal facility, department or unit which is licensed or subject to licensing
by the department of mental health pursuant to section 19 of chapter 19, or by
the department of developmental services pursuant to section 15 of chapter 19B;
any facility as defined in section 1 of chapter 123; a state-operated veterans'
home; or any facility as set forth in section 1 of chapter 19 or section 1 of
chapter 19B."
G. L.
c. 149, § 187 (a).

[6] The list
contains a 
"physician,
medical intern or resident, physician assistant, registered nurse, licensed
practical nurse, nurse aide, orderly, home health aide, hospice worker,
homemaker, administrator, responsible person, medical examiner, dentist,
optometrist, optician, chiropractor, podiatrist, coroner, police officer,
speech pathologist, audiologist, social worker, pharmacist, physical or
occupational therapist or health officer, paid for caring for a patient or
resident."   
G. L.
c. 111, § 72G, first par.

[7] General Laws
c. 152, § 28, states, "If the employee is injured by reason of
the serious and wilful misconduct of an employer or of any person regularly
intrusted with and exercising the powers of superintendence, the amounts of
compensation hereinafter provided shall be doubled."

[8] The plaintiff
raises no argument on appeal regarding the denial of the motion for relief from
judgment relating to counts other than the whistleblower count.  Because we are reversing the dismissal of
count 1, we need not further explore whether the judge erred in denying
relief from judgment regarding that count.