413 Mass. 670 (1992)
602 N.E.2d 570
CATALINA PEREZ, administratrix,[1]
vs.
BAY STATE AMBULANCE & HOSPITAL RENTAL SERVICE, INC., & others.[2]
Supreme Judicial Court of Massachusetts, Hampden.
September 10, 1992.
November 10, 1992.
Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & GREANEY, JJ.
*671 Louis Kerlinsky for the plaintiff.
George W. Marion for Baystate Medical Center.
Melinda M. Phelps for David P. Doyle.
Eileen Z. Sorrentino for Bay State Ambulance & Hospital Rental Service, Inc.
ABRAMS, J.
The plaintiff, Catalina Perez, brought a malpractice action against Bay State Ambulance & Hospital Rental Service, Inc. (Bay State Ambulance), Baystate Medical Center (Baystate Medical), and Dr. David P. Doyle (Dr. Doyle). Pursuant to G.L.c. 231, § 60B (1990 ed.), a judge convened a medical malpractice tribunal. After hearing, the tribunal determined that the plaintiff's offer of proof was "not sufficient to raise a legitimate question of liability appropriate for judicial inquiry." The plaintiff, claiming indigency, then moved for a reduction of the bond to twenty-five dollars. The judge denied the motion. The defendants then filed motions to dismiss which were allowed. The plaintiff appeals.
On appeal, the plaintiff asserts that it was error for the tribunal to consider her claim against Bay State Ambulance because it is not a "provider of health care" as defined in § 60B. The plaintiff also contends that the tribunal erred in determining that the offer of proof against Dr. Doyle and Baystate Medical was insufficient. Finally, the plaintiff argues that the judge erred in not reducing the bond to twenty-five dollars. We transferred the case to this court on our own motion.
We reverse the determination that Bay State Ambulance is a "provider of health care" under G.L.c. 231, § 60B. We affirm the determination of the tribunal that the offer of proof as to Dr. Doyle and Baystate Medical was insufficient to "raise a legitimate question of liability." Although we conclude there was no error in the judge's denial of the motion to reduce the bond, the bond should be reduced to four thousand *672 dollars to reflect the fact that Bay State Ambulance should not have been before the tribunal. The bond should be posted in the Superior Court within thirty days of entry of the rescript in the Superior Court.
We summarize the proof offered by the plaintiff.[3] About 6 P.M. on February 5, 1986, Bay State Ambulance went to the home of the plaintiff's decedent, Juan Perez. Perez suffered from a fever of three to four days' duration. Bay State Ambulance's staff of emergency medical technicians (EMTs) checked Perez's vital signs and then took Perez to Baystate Medical. The family told the EMTs that Perez's personal physician would meet Perez at Baystate Medical.
The plaintiff's proof showed that Dr. Doyle, the emergency physician, diagnosed Perez as having "[g]eneral weakness, [h]igh [t]emp, flu x 3 days." At Baystate Medical, Perez, a seventy-one year old disabled man who did not speak English, received some medication to take home and a written prescription for medication to cure a urinary tract infection, which was to be filled. Bay State Ambulance took Perez home at 9:15 P.M.
At 2:30 A.M. the next day, the same Bay State Ambulance EMTs responded to a second call from the Perez family. After taking Perez's vital signs, the EMTs determined that the vital signs had not changed significantly. The plaintiff showed the EMTs the pills that Perez had received at the hospital. The Perez family asked that the EMTs take Perez to Baystate Medical to have the prescription filled. The plaintiff stated that, because they had no automobile and had to go to work early in the morning, they would be unable to have the prescription filled. The plaintiff states that the *673 EMTs instituted an informational patch[4] with Baystate Medical. The EMTs relayed the patient's information to Baystate Medical through a dispatcher and informed Baystate Medical that the patient wanted to fill his prescription at Baystate Medical. A nurse passed that information on to Dr. Doyle. Dr. Doyle replied that Perez would have to get the prescription filled at a pharmacy because the Baystate Medical could not fill it. Dr. Doyle also said that the patient could be rechecked if he so desired. According to the plaintiff, the EMTs told the family that the hospital could not fill the prescription. The plaintiff claims that the EMTs did not inform Perez's family that Perez could be rechecked. According to the plaintiff, Bay State Ambulance said that the hospital could do nothing for the patient. The family agreed to try to obtain transportation to a pharmacy from a friend.
At this time, the EMTs gave the family two patient refusal forms, one in English and one in Spanish. The forms stated that the patient had refused transport. The waiver form noted that the family had wanted to take Perez to Baystate Medical to fill the prescription. An individual in the house who spoke English and Spanish acted as interpreter in explaining the forms.[5] The interpreter signed the forms, refusing assistance on behalf of Perez. Once the forms were signed, the EMTs left.
At 6:29 A.M. on February 6, 1986, Bay State Ambulance again responded to an emergency call from the Perez family. Finding Perez unresponsive with no pulse, respiration, or blood pressure, the EMTs initiated cardiopulmonary resuscitation and rushed Perez to Baystate Medical. There, Dr. Doyle attempted to resuscitate him but Juan Perez was declared dead at 7:30 A.M.
*674 As part of her offer of proof, the plaintiff averred that, since leaving the hospital, Perez was hotter and redder and that he had become worse. In addition, the plaintiff offered the opinion of a medical expert who assumed that Perez was hotter and redder.[6] The expert noted that it was extremely doubtful that the medication given Perez on his first trip to the hospital had altered his condition that quickly. The expert stated that the EMTs were responsible for notifying the emergency room of any change in the patient's condition between the first two responses. If there had been a change and the EMTs had notified the emergency room, it would be the responsibility of the emergency room to authorize transport for the patient. The expert wrote that either the EMTs' failure to transport Perez if his symptoms were in progress or their transmission of the wrong information to the hospital would be negligent behavior. The plaintiff's expert concluded that the failure to transport Perez "probably was a substantial factor which contributed to the hastening of his death on February 6 at about 6:30 A.M. Had he been brought to the hospital when requested, about 2:30 A.M., the care, attention and treatment he probably would have received in the hospital probably would have delayed his death."
In an additional letter, the plaintiff's expert also noted that the EMTs were trained at the basic level and thus were not allowed to make diagnoses. The expert noted that the absence of any discussion of qualifications in the transcript of the informational patch and concluded that Dr. Doyle relied on "inadequately trained personnel to come to the conclusion that Mr. Perez should not be transported. Accepted medical practice would have been to challenge the EMT. If the conclusions proved erroneous, he [Dr. Doyle] should have had *675 the patient transported." The expert again opined that the failure to transport Mr. Perez to the hospital at 2:30 A.M. "was a substantial factor in contributing to the hastening of his death" at 6:30 A.M. "Had he [Perez] been brought to the hospital, when requested at 2:30 A.M., the care and treatment he probably would have received in the hospital would have delayed his death."
1. Applicability of G.L.c. 231, § 60B, to Bay State Ambulance. A provider of health care is defined as "a person, corporation, facility or institution licensed by the commonwealth to provide health care or professional services as a physician, hospital, clinic or nursing home, dentist, registered or licensed nurse, optometrist, podiatrist, chiropractor, physical therapist, psychologist, or acupuncturist, or an officer, employee, or agent thereof acting in the course and scope of his employment." G.L.c. 231, § 60B. The plaintiff correctly notes that the EMTs were not included in the Legislature's list of "provider[s] of health care." The judge found that EMTs were "licensed by the Commonwealth" and were "within the spirit" of the law and that therefore a medical malpractice claim against an ambulance company and its EMT employees had to be brought before a medical tribunal before it could proceed to trial. That was error.
In interpreting statutory language, the court must "give the words their plain meaning in light of the aim of the Legislature." Commonwealth v. Vickey, 381 Mass. 762, 767 (1980). The statute specifically defines "provider of health care." See G.L.c. 231, § 60B. "A definition which declares what a term means ... excludes any meaning that is not stated." Colautti v. Franklin, 439 U.S. 379, 392-393 n. 10 (1979), citing 2A C. Sands, Statutes and Statutory Construction § 47.07 (4th ed. Supp. 1978). See Pittsburgh Nat'l Bank v. United States, 771 F.2d 73, 75-76 (3d Cir.1985); Meltzer v. Zoller, 520 F. Supp. 847, 855 (D.N.J. 1981); Titanus Cement Wall Co. v. Watson, 158 Mich. App. 210, 217 (1987); International Minerals & Chem. Corp. v. Heitkamp, 417 N.W.2d 791, 793 (N.D. 1987); State v. Leek, 26 Wash. App. 651, 655-656 (1980). Bay State Ambulance *676 is not within the definition of health care provider under G.L.c. 231, § 60B, and therefore the medical tribunal should not have considered the plaintiff's claim against it.
2. Sufficiency of the offer of proof. In evaluating the offer of proof, the tribunal may not examine the weight and credibility of the evidence. Gugino v. Harvard Community Health Plan, 380 Mass. 464, 468 (1980). To succeed against a physician, the plaintiff's offer of proof must show that: (1) a doctor-patient relationship existed; (2) the doctor did not conform to accepted medical standards in performing his duties with regard to the patient; and (3) damage resulted from this failure to conform. Kapp v. Ballantine, 380 Mass. 186, 193 (1980).
The plaintiff's offer of proof fails on the ground that there is no evidence that Dr. Doyle failed to conform to accepted medical standards. In evaluating expert testimony, the "tribunal should give consideration to the proffered opinion of an expert if the offer of proof is sufficient to show that a trial judge in his discretion might properly rule that the qualifications of the witness are sufficient" (emphasis deleted). Kapp v. Ballantine, supra at 192. The plaintiff's expert stated that the "emergency room may accept the findings of the ambulance crew, unless there is reason to discount those findings based on experience, or other reasons to believe the emergency crew may be in error." The offer of proof does not contain any evidence that there was any reason for Dr. Doyle to conclude that the information he was receiving from the EMTs was incorrect. The expert's statement that "Dr. Doyle relied on inadequately trained personnel to come to the conclusion that [the decedent] should not be transported" is not substantiated by evidence. Both EMTs had basic training which included the taking of vital signs. According to the plaintiff's proof, the EMTs checked the vital signs and concluded that there had been no change in the vital signs. There was no evidence that the EMTs were inadequately trained to check vital signs.
The plaintiff argues that the EMTs were not trained to make a diagnosis, but that they did make a diagnosis. That *677 claim is not supported by the evidence. The evidence was that the EMTs were trained to take vital signs and they did so. The plaintiff's offer of proof does not support the expert's assumption that Dr. Doyle negligently relied on inadequately trained personnel.
The plaintiff argues that the offer of proof was sufficient as to Baystate Medical for the same reasons that it was sufficient as to Dr. Doyle. In essence, the plaintiff repeats her claim that Dr. Doyle relied on inadequately trained EMTs and that the EMTs made a diagnosis. The offer of proof was insufficient as to Dr. Doyle and it also is insufficient for Baystate Medical. There was no error in the tribunal's determination that the offer of proof was insufficient as to Dr. Doyle and Baystate Medical.
3. The decision not to reduce the bond. The judge may reduce, but not eliminate, the bond if he or she determines that the plaintiff is indigent. G.L.c. 231, § 60B. The plaintiff filed an affidavit of indigency, requesting that the judge determine her to be indigent and asking the judge to reduce the bond to $25. The judge found the plaintiff to be indigent, but denied her request that the bond be reduced, finding that the "[p]laintiff's claim is without merit. No reasonable person would expend their own funds in pursuit of this action, nor shall the Commonwealth." After the plaintiff's motion to reduce the amount of the bond was denied, she appealed to a single justice of the Appeals Court. See G.L.c. 261, § 27D. She was advised erroneously, however, that the appeal could not be taken under § 27D.[7]
General Laws c. 231, § 60B, simply states that, after a motion is "filed by the plaintiff, and a determination by the court that the plaintiff is indigent said justice may reduce the amount of the bond but may not eliminate the requirement thereof." It does not set forth the standards by which the determination of indigency must be made. We have said that *678 a judge should follow the standards set out in G.L.c. 261, § 27A, in determining indigency under G.L.c. 231, § 60B. Denton v. Beth Israel Hosp., 392 Mass. 277, 279 n. 3 (1984). General Laws c. 261, §§ 27A-27D, set out procedures to be followed in cases in which indigency is claimed. We now hold that the procedures set forth in G.L.c. 261, §§ 27B-27D, should be followed in determining the practice under § 60B. "[W]here two or more statutes relate to the same subject matter, they should be construed together so as to constitute a harmonious whole consistent with the legislative purpose." Board of Educ. v. Assessor of Worcester, 368 Mass. 511, 513-514 (1975). The plaintiff correctly sought review pursuant to § 27D. Because the plaintiff was denied review erroneously, we comment briefly on the amount of the bond.
If the judge determines that the offer of proof "if construed most favorably to the plaintiff, could not support a verdict for the plaintiff," Tosti v. Ayik, 394 Mass. 482, 491 (1985), then he or she may refuse to reduce the bond. Because the offers of proof were insufficient as to both Dr. Doyle and Baystate Medical, it was within the discretion of the judge to decline to reduce the bond.
The plaintiff argues that the judge abused his discretion by considering the merits of the case in determining whether to allow the plaintiff's request for reduction of the statutory bond. The plaintiff asserts that bonds never will be reduced if the merits of the case are evaluated after a tribunal's finding of insufficient evidence. We do not agree. The "standard is essentially one of reasonableness, and looks to whether a [litigant] who is able to pay and was paying the expenses [herself], would consider the `document, service or object' sufficiently important that [s]he would choose to obtain it in preparation for trial." Commonwealth v. Lockley, 381 Mass. 156, 160 (1980). That is the standard to be employed under § 60B. The judge determined that "[n]o reasonable person would expend their own funds in pursuit of this action." The judge used a reasonableness standard. There was no error. Because we have concluded that Bay State Ambulance was not properly before the tribunal, we think it reasonable that *679 the bond be reduced to four thousand dollars to reflect the fact that one defendant should not have been before the tribunal.
4. Conclusion. The judge's ruling that G.L.c. 231, § 60B, applied to Bay State Ambulance was in error. That part of the ruling is reversed and the plaintiff may proceed with her claim against Bay State Ambulance without filing a bond. The dismissal of the plaintiff's claims against Dr. Doyle and Baystate Medical is affirmed unless a bond in the amount of four thousand dollars shall be posted in the Superior Court within thirty days of entry of the rescript in the Superior Court.
So ordered.
NOTES
[1] Of the estate of Juan Perez, and individually.
[2] Baystate Medical Center and Dr. David P. Doyle.
[3] The offer of proof consisted of an affidavit by the plaintiff, the report of Bay State Ambulance, three letters from an expert, a waiver form signed by a representative of the plaintiff, a death certificate, a Baystate Medical resuscitation form, portions of the Policy and Procedure Manual describing the responsibilities of EMTs at various training levels, a partial transcript of the communication between Bay State Ambulance and Baystate Medical, and certain interrogatories and answers.
[4] An informational patch is the method of communication used by EMTs and hospitals. The EMTs call the dispatcher and relay information and the dispatcher repeats it to the hospital.
[5] The forms stated that Luis Gonzalez for Perez was responsible for refusing medical transportation and care. It released Bay State Ambulance from liability and then noted that the family wanted transportation to get the prescription filled.
[6] The expert's letter begins: "I make the following assumptions at your request: I assume that Mr. Perez returned from the emergency room in the ambulance about 9 P.M. on February 5, 1986, and that he became in more pain and got hotter and redder thereafter; his family then called the ambulance company whose ambulance arrived on February 6, 1986, at about 2:30 A.M. and refused to transport him to the hospital. He died about 6:30 A.M. on February 6, 1986."
[7] The plaintiff then filed a petition under G.L.c. 231, § 118. A single justice of the Appeals Court denied the plaintiff's petition to review on the ground that the appeal was not timely filed.