COMMONWEALTH vs. JOSEPH FICO & another.[1]

Middlesex. March 5, 2012. - July 13, 2012.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Constitutional Law,* Assistance of counsel. *Practice, Criminal,* Assistance of counsel. *Moot Question.*

This court exercised its discretion to review an appeal that was moot, where it raised issues of significant public importance over which there appeared to be uncertainty. [743]

In requiring that a criminal defendant seeking appointment of counsel at public expense bear the burden of proving his indigency by a preponderance of the evidence, a Superior Court judge did not violate the defendant's constitutional right to due process. [743-744]

This court concluded that, in a proceeding to determine whether a criminal defendant seeking appointment of counsel at public expense was indigent, the attribution to the defendant, pursuant to S.J.C. Rule 3:10, § 1 (b) (ii), of certain assets and income of a third party who was substantially in the same relationship as a spouse did not violate the defendant's constitutional rights, where there was a rational connection between the third party's status and her willingness to pay for counsel for the defendant; where, by statute, spouses are required to contribute to the necessities, such as legal fees, for the support and maintenance of the other spouse; and where the defendant could rebut the evidentiary presumption created by the rule by proving, by a preponderance of the evidence, that the criteria set forth in the rule did not apply or that the third party was unwilling to contribute; for similar reasons, the attribution to the defendant, pursuant to S.J.C. Rule 3:10, § 1 (b) (iii), of certain assets and income of his mother did not violate the defendant's constitutional rights. [744-748]

INDICTMENTS found and returned in the Superior Court Department on December 1, 2009.

A question of law was reported to the Appeals Court by *Elizabeth M. Fahey,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*Brad P. Bennion* for the defendant.

[1] Administrative Office of the Trial Court, intervener.

*Natalie S. Monroe*, Assistant Attorney General, for the intervener.

IRELAND, C.J. In December, 2009, a Middlesex County grand jury returned two indictments charging the defendant with trafficking in cocaine, in violation of G. L. c. 94C, § 32E (*b*) (1), and conspiracy to violate the drug laws, in violation of G. L. c. 94C, § 40.[2] On January 29, 2010, the defendant was arraigned, at which time he filed an affidavit of indigency, see G. L. c. 261, § 27B, was appointed counsel, and tendered pleas of not guilty to the charges. Subsequently, during proceedings on a motion to suppress, a Superior Court judge questioned the defendant's indigency status, took evidence on the matter, and, on October 1, 2010, entered a memorandum and order concluding that the defendant was not indigent because he was not in custody and had "available funds," as contemplated by S.J.C. Rule 3:10, § 1 (b), as amended, 416 Mass. 1306 (1993), from his girl friend and his mother. The judge struck the appearance of counsel, in both the case before her and in the probation revocation proceeding, see note 2, *supra*. She then reported the correctness of her decision to the Appeals Court, see Mass. R. Crim. P. 34, as amended, 442 Mass. 1501 (2004), and we granted the defendant's application for direct appellate review. The defendant argues, as relevant here, that the judge's consideration of the available funds of his girl friend and his mother under S.J.C. Rule 3:10, § 1 (b), in determining whether he was indigent, infringed on or violated his right to counsel under the Sixth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights. Because we agree with the judge's conclusion that the income and assets of the defendant's girl friend and his mother, were he to live with her, should be considered in assessing the defendant's indigency status, we reject his arguments and dismiss the appeal.

1. *Background.* In her memorandum of decision and order, the judge found the following facts. See *Commonwealth* v.

[2]Previously, in 2005, the defendant pleaded guilty in the Superior Court to five charges of armed robbery and was sentenced to five years' probation with conditions. In September, 2009, the Commonwealth commenced probation revocation proceedings against the defendant. The defendant filed an affidavit of indigency and was appointed counsel.

*O'Neil*, 233 Mass. 535, 543 (1919) (judge's report should "recite or refer to facts or parts of the record sufficient to make intelligible the question or questions of law reported"). At the time of the judge's order in October, 2010, the defendant was twenty-four years of age. Before their arrest, the defendant and his girl friend (and codefendant), Pamela Barberio, had lived together since April, 2009. At all times, Barberio was the primary bread-winner. Subsequent to their arrest and release on bail, the defendant and Barberio, along with Barberio's daughter, moved into Barberio's mother's house. The defendant has had a close relationship with Barberio's daughter, which was one reason why, after his release on bail, he did not go to his own mother's house to live.[3] In addition, the defendant and Barberio are in substantially the same relationship as spouses.

Barberio's mother is not indigent and has the resources to pay for Barberio's private counsel. The defendant does not contribute financially to the household and is fully supported by Barberio and her mother. Barberio earns about $350 per week and is a part-time student.

Because the defendant expressed a desire to change his residence to his mother's house, the judge provided him with additional time to present evidence supportive of his indigency were he to live with her. The defendant presented evidence that his mother in 2009 earned $80,240; in 2008 earned $75,104; and in 2007 earned $53,118. She obtained a new job in 2010 and earns $85,000 annually. The defendant's mother lives in a house that is valued at a minimum of $300,000. The mortgage she obtained on that property in 2005 was for $276,000. The defendant's mother was a single mother for many years and did not receive much child support from the defendant's father. Apart from the mortgage,[4] she owes about $1,200 to a gas utility

---

[3]Initially, the defendant claimed that he lived at Barberio's mother's house because the probation department instructed him that while he was being electronically monitored he could live only in Middlesex County. The judge learned from the probation department that the defendant could live anywhere in Massachusetts and so advised the defendant.

[4]In her findings, the judge did not specify how much principal the defendant's mother had paid on the mortgage. Nor did she set forth the monthly mortgage payment or amount of real estate taxes assessed on the property. There was evidence in the record that the defendant's mother pays about $149 monthly for homeowner's insurance.

and has a $500 automobile insurance payment.[5,6]

The judge concluded that, although the defendant earned less than the current poverty threshold, he could not be classified as indigent because he had "available funds" attributable to him from Barberio. The judge also determined that, were the defendant to live with his mother, he could not be considered indigent because his mother is not indigent and from her there were "available funds" that would be attributable to him.

2. *Overview of the appointment of counsel and indigency determinations*. The right to counsel is a fundamental right protected by both the Sixth Amendment and art. 12.[7] *Gideon* v. *Wainwright*, 372 U.S. 335, 342-345 (1963). *Commonwealth* v. *Babb*, 416 Mass. 732, 735 (1994). If an accused lacks the financial means to hire counsel, the right necessarily encompasses a duty on the court to appoint counsel for the accused. *Gideon* v. *Wainwright*, *supra* at 344. *Commonwealth* v. *Babb*, *supra*.

Indigency determinations are governed by G. L. c. 211D[8] and S.J.C. Rule 3:10, as amended, 416 Mass. 1306 (1993) (rule 3:10).[9] See Mass. R. Crim. P. 8, as amended, 397 Mass. 1226 (1986) ("If a defendant [is] charged with a crime for which [he

---

[5]The defendant's mother testified that "every bit" of the salary she earns "either goes to [the] mortgage, or car, or travel [expenses incurred in commuting from Massachusetts to Maine daily for work]." There was no specification as to the amount owed monthly on her automobile, apart from the insurance.

[6]It is clear from a transcript of the proceeding, wherein the judge questioned the defendant's mother, that the defendant's mother did offer the judge "a number of materials" concerning her finances. These materials, however, were not copied or otherwise made part of our record. Thus, although the judge may have had all the pertinent information before her, we do not. The importance of having an adequate record for appellate review cannot be overstated.

[7]The right to counsel extends to every "critical stage" of the criminal process. *United States* v. *Wade*, 388 U.S. 218, 224 (1967). *Commonwealth* v. *Trapp*, 423 Mass. 356, 358, cert. denied, 519 U.S. 1045 (1996).

[8]The statute in effect at the time of the hearings in this case was G. L. c. 211D, § 2 1/2. In 2011, that statute was repealed and replaced with G. L. c. 211D, § 2A. St. 2011, c. 68, §§ 112, 221. The two versions do not differ in any respect material to this opinion. We refer to § 2 1/2 in the present tense for convenience.

[9]Although we refer to criminal defendants herein and in *Commonwealth* v. *Porter*, *ante* 724, 726 n.4 (2012), and *Commonwealth* v. *Mortimer*, *post* 749, 752 & n.4 (2012), also decided by this court today, S.J.C. Rule 3:10, as amended, 416 Mass. 1306 (1993) (rule 3:10), applies to a "[p]arty," which is defined by that rule also to include "a juvenile in a delinquency proceeding,

may be entitled to appointed counsel and] initially appears in any court without counsel, the judge shall follow the procedures established in G. L. c. 211D and in [rule] 3:10"). A party seeking court appointed counsel is required to execute a waiver authorizing the probation department to obtain the party's wage and tax information from the department of revenue and any other relevant information from the registry of motor vehicles. See G. L. c. 211D, § 2 1/2 (a), as appearing in St. 2005, c. 54, § 1. The probation department uses this information to complete an indigency intake report that includes a recommendation concerning whether the party seeking appointed counsel is indigent. G. L. c. 211D, § 2 1/2 (b), as appearing in St. 2005, c. 54, § 1. Both the probation officer completing the report and the party seeking the appointment of counsel must sign the report, and the person seeking the appointment of counsel then "shall certify under the pains and penalties of perjury that the information contained therein is true and that he has not concealed any information relevant to his financial status." Id. The completed report "shall be presented to a judge who may adopt or reject the recommendations in the report, either in whole or in part." Id. Ultimately, a judge must decide whether the party is (1) indigent; (2) indigent but able to contribute; or (3) not indigent, and must "enter findings" on a particular form. Rule 3:10, § 4(a). G. L. c. 211D, § 2, inserted by St. 1983, c. 673, § 1.[10] If counsel is appointed, the probation department is charged with conducting periodic written reassessments of the party's financial status and certifying whether the party continues to satisfy the definition of "indigent" or "indigent but able to contribute." G. L. c. 211D, § 2 1/2 (c), as appearing in St. 2005, c. 54, § 1. A party's indigency status may be judicially reviewed "at any stage of a court proceeding if information regarding a change in financial circumstances becomes available." Rule 3:10, § 7 (a).

In deciding whether a party is indigent, a judge is required to

and any person, including a juvenile, in a civil matter in which the person has a right to counsel." Rule 3:10, § 1 (i).

[10]In 2011, subsequent to the hearings in this case, the text of G. L. c. 211D, § 2, was rewritten. St. 2011, c. 68, §§ 112, 221. The two versions do not differ in any respect material to this opinion.

apply the definitions set forth in rule 3:10, § 1. See *id.* at § 4 (b). A party is indigent if he is:

> "(i) receiving one of the following types of public assistance: Aid to Families with Dependent Children (AFDC), Emergency Aid to Elderly, Disabled and Children (EAEDC), poverty related veterans' benefits, food stamps, refugee resettlement benefits, Medicaid, or Supplemental Security Income (SSI);
>
> "(ii) receiving an annual income, after taxes, one hundred twenty-five percent or less of the then-current poverty [guideline] referred to in G. L. c. 261, § 27A (b);[11],[12]
>
> "(iii) residing in a tuberculosis treatment center or a public or private mental health, mental retardation or long term care facility, including the Bridgewater State Hospital and the Treatment Center, or the subject of a proceeding in which admission or commitment to such a center or facility is sought, or who is the subject of a proceeding in which a substituted judgment determination concerning treatment is sought . . . [;]
>
> "(iv) serving a sentence in a correctional institution and has no available funds; or
>
> "(v) held in custody in jail and has no available funds."

Rule 3:10, § 1 (f). A party is indigent but able to contribute if he:

> "(i) has an annual income, after taxes, of more than one hundred twenty-five percent and less than two hundred fifty percent of the then current poverty [guideline] referred to in G. L. c. 261, § 27A (b), or
>
> "(ii) is charged with a felony within the jurisdiction of the Superior Court and whose available funds are insufficient

---

[11]General Laws c. 261, § 27A (b), defines "[i]ndigent" as "a person whose income, after taxes, is 125 per cent or less of the current poverty [guideline] established annually by the Community Services Administration pursuant to section 625 of the Economic Opportunity Act, as amended . . . ."

[12]There is no dispute in this case that the defendant's income after taxes is below 125 per cent of the then-current poverty guideline.

to pay the anticipated cost of counsel for the defense of the felony but are sufficient to pay a portion of that cost."

Rule 3:10, § 1 (g). Last, "[n]otwithstanding the determination that the application of those definitions indicates, a judge nevertheless may place a party in either of the other categories described in [§] 4 (a) [indigent, indigent but able to contribute, or not indigent], based on a consideration of the party's available funds in relation to the party's basic living costs or based on special circumstances, or both, provided that the judge sets forth in findings on the record the reason for doing so." *Id.* at § 4 (b).

In determining what constitutes "[a]vailable [f]unds," in addition to a party's "liquid assets and disposable net monthly income," certain assets and income from a party's household may be considered and "shall include"

> "the liquid assets and disposable net monthly income of the party's spouse (or person in substantially the same relationship) and each of the party's parents, provided, in each instance, any such person lives in the same residence as the party and contributes substantially toward the household's basic living expenses."

*Id.* at § 1 (b) (ii). Further, the available funds of "any party over the age of sixteen who is substantially supported by a parent . . . shall include the available funds of that person's parent." *Id.* at § 1 (b) (iii).

3. *Discussion.* a. *Mootness.* The intervener argues that the case is moot because after we granted direct appellate review, the defendant obtained private counsel and resolved both of his criminal cases. We nevertheless exercise our discretion to review the case because it raises issues of significant public importance over which there appears to be uncertainty. See *Commonwealth v. McCulloch*, 450 Mass. 483, 486 (2008), and cases cited. Further, the issues are likely to arise again, yet evade review. See *id.* We turn now to the merits.

b. *Allocation of the burden of proof.* The defendant argues that, in making the indigency determination, the judge erroneously required him to prove his indigency status in violation of State law and the due process clause of the Fourteenth Amend-

ment to the United States Constitution. The defendant contends that for an indigency determination to pass scrutiny under the Federal Constitution, all he must do is make a prima facie showing of indigency, which would be satisfied by completing the indigency intake report. He asserts that thereafter the Commonwealth must prove indigency beyond a reasonable doubt. We recently addressed and rejected these arguments in *Commonwealth* v. *Porter, ante* 724, 730-734 (2012) (*Porter*), also decided by this court today, concluding that "a defendant seeking appointment of counsel at public expense bears the burden of proving [his] indigency by a preponderance of the evidence." Our holding in *Porter* is dispositive on the issue here.

c. *Attribution of household income to the defendant.* i. *Spousal assets and income.* The defendant contends that rule 3:10, § 1 (b) (ii), which allows certain assets and income of his household to be attributed to him in making the determination of indigency, is unconstitutionally overbroad because it creates an obligation on a third party to pay legal expenses for another and provides no mechanism for enforcement. We also addressed this same issue in *Porter, supra* at 734-736, as it related to the assets and income of a spouse. We reasoned that because § 1 (b) (ii) does not operate to deny a person the right to counsel, the rule did not infringe on that right but, rather, "merely creates an evidentiary presumption, which is rebuttable, to assist in determining the party's income and eligibility for appointed counsel at public expense." *Id.* at 734-735. We concluded that the appropriate standard to evaluate the rule is the "rational connection test" for rebuttable presumptions. *Id.* This test requires:

> "[T]here shall be some rational connection between the fact proved and the ultimate fact presumed, and . . . the inference of one fact from proof of another shall not be so unreasonable as to be a purely arbitrary mandate. So, also, it must not, under guise of regulating the presentation of evidence, operate to preclude the party from the right to present his defense to the main fact thus presumed."

*Id.* at 735, quoting *Mobile, Jackson & Kan. City R.R.* v. *Turnipseed,* 219 U.S. 35, 43 (1910). See *DiLoreto* v. *Fireman's Fund*

*Ins. Co.*, 383 Mass. 243, 248 (1981). Applying that standard, we explained that a rational connection could be drawn between one's status as a spouse and one's willingness to pay for counsel for that defendant and that spouses by statute are required to contribute to the cost of necessities, such as legal fees, for the support and maintenance of the other spouse. *Porter, supra.* Further, the defendant could rebut the presumption by proving, by a preponderance of the evidence, that any one of the criteria set forth in § 1 (b) (ii) does not apply, or that the spouse is unwilling to contribute. *Id.* For these reasons, we determined that the rule survived constitutional scrutiny. *Id.* at 735-736. Concerning enforcement of any payment obligation, we noted that an appointment of counsel could be made with an order for payment followed by a referral to the Attorney General or a district attorney to pursue any available civil remedies on behalf of the Commonwealth as creditor for services rendered. *Id.* at 733-734, citing G. L. c. 12, § 5. What we stated in *Porter, supra* at 735-736, governs here with regard to the attribution of Barberio's assets and income to the defendant insofar as the defendant's constitutional challenge is concerned.[13]

The defendant also contends that the judge erroneously created a spousal obligation, determining that he and Barberio were in substantially the same relationship as a married couple. However, on the record before us, the defendant did not raise this issue below, and the judge did not consider it as a contested issue. The claim is therefore waived. *Wynn & Wynn, P.C.* v. *Massachusetts Comm'n Against Discrimination*, 431 Mass. 655, 674 (2000) ("Objections, issues, or claims — however meritorious — that have not been raised [below] are deemed to have been waived on appeal").

ii. *Parental assets and income.* The defendant also challenges the constitutionality of rule 3:10, § 1 (b) (ii), insofar as it attri-

---

[13]Although the judge noted that the defendant and Barberio lived in the house of Barberio's mother, and that Barberio's mother was not indigent, she attributed only the "available funds" of Barberio, and not of Barberio's mother, to the defendant. Rule 3:10, § 1 (b) (ii), permits consideration of the available funds of a spouse, a person in substantially the same relationship as a spouse, and "each of the party's parents." This latter phrase would include the defendant's mother and father, "provided . . . any such person lives in the same residence as the [defendant]." *Id.* The consideration of available funds of an "in-law" or someone in substantially the same relationship as an "in-law" is not permitted by the rule.

buted the assets and income of his mother to him. The judge's order, however, attributed the "available funds" of the defendant's mother to him pursuant to rule 3:10, § 1 (b) (iii) (§ 1 [b] [iii]). We thus examine § 1 (b) (iii), and we do so under the "rational connection test" for rebuttable presumptions. See *Porter, supra.*

As has been stated, § 1 (b) (iii) allows the assets and income of a defendant's parent to be attributed to the defendant if he is over the age of sixteen and is substantially supported by that parent. Section 1 (b) (iii) creates a presumption that a parent who substantially supports his or her child over the age of sixteen will also contribute to the cost of the child's legal counsel. Because the defendant is an adult child, twenty-four years of age, we review the application of § 1 (b) (iii) only as it applies to him, namely, in the circumstances of his being an adult child. Insofar as the presumption applies to an adult child, it recognizes that, for no doubt a variety of reasons, some adult children remain dependent on a parent or parents. A rational connection exists between the status of a parent supporting a dependent adult child and that same parent's willingness to extend that support to pay for legal counsel, in whole or in part, for his or her dependent adult child should the circumstances present. See *Mobile, Jackson & Kan. City R.R.* v. *Turnipseed, supra.*

No arbitrary mandate in these circumstances is imposed because the rule permits a judge essentially to disregard the indigency standards and appoint counsel when the judge finds that "special circumstances" so warrant. See rule 3:10, § 4 (b). Further, the presumption at all times is rebuttable. See *DiLoreto* v. *Fireman's Fund Ins. Co., supra.* The defendant may rebut the presumption by showing, by a preponderance of the evidence, that he is not substantially supported by the parent, or that the parent is unwilling or unable to contribute. See *Porter, supra* at 735. These latter two factors ensure that the funds of a defendant's parent are truly available before being attributed to the defendant. Cf. *United States* v. *Salemme,* 985 F. Supp. 197, 201 (D. Mass. 1997) (in determining under Criminal Justice Act whether defendant should be appointed counsel in Federal court, financial resources of defendant's family should not be considered unless family member indicates willingness and financial ability to retain counsel promptly). The willingness factor

recognizes that there is no legal obligation on the part of a parent to financially support an adult child. See *United States* v. *Zelenka*, 112 F. Supp. 2d 708, 716 (M.D. Tenn. 1999) ("When considering the Sixth Amendment right of a defendant to counsel, it would be dangerous to leave fulfillment of that right to the goodwill and benevolence of individuals who owe no legal obligation to the defendant"). See also *T.F.* v. *B.L.*, 442 Mass. 522, 532 (2004) (parent has legal obligation to support minor children).

Concerning the factor of ability, we caution that the determination of ability to contribute cannot be considered in a vacuum. How a defendant is "substantially supported" by a parent should be evaluated in conjunction with the definitions set forth in rule 3:10, § 1, pertaining to what constitutes basic living costs, disposable net monthly income, income, and liquid assets. These definitions also should be considered not only with respect to the available funds of the defendant, but also in connection with the available funds of the parent from whom the income is being attributed. This careful consideration necessarily entails whether a parent's financial resources are, in fact, reasonably available to the defendant. What is reasonably available will turn on whether the attribution of a parent's financial resources to a defendant would impair a parent's ability to provide for himself or others, including dependents, and to what extent, or would otherwise result in hardship. These are fact-intensive inquiries that must be addressed, and determined whether to be credible, in the judge's findings.

Last, there is nothing in the record that indicates that the presumption was used in this case "under guise of" preventing the defendant from obtaining counsel. *Porter, supra* at 736, quoting *Mobile, Jackson & Kan. City R.R.* v. *Turnipseed, supra* at 43. For these reasons, we reject the defendant's constitutional challenge to the rule.

iii. *Judge's assessment.* Here, the judge did not have the benefit of our decision in *Porter, supra* at 734-736, or our decision in this case. Further inquiry concerning the factors we have identified herein, in particular, the ability of the defendant's mother to contribute, should have been made (and should have been applicable to the probation revocation proceeding, see note

2, *supra*). Because, however, the defendant's cases have been resolved, the case is moot, and no remand or further action is necessary.

4. *Conclusion.* Requiring the defendant to prove his indigency is not unconstitutional. See *Porter, supra* at 736. Consideration of the available funds of a defendant's spouse or the substantial equivalent (here, girl friend), or a defendant's parent, under S.J.C. Rule 3:10, § 1 (b) (ii) or (iii), in determining whether a defendant is indigent does not infringe on or violate the right to counsel afforded by the Sixth Amendment or art. 12. No further action in the case is necessary because it is moot. The appeal is dismissed.

*So ordered.*