AALIYAH FAIRCLOTH & another[1] *vs.* LOUIS DILILLO.

Essex. April 2, 2013. - August 5, 2013.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Medical Malpractice,* Bond. *Negligence,* Medical malpractice. *Practice, Civil,* Bond, Judicial discretion. *Bond.*

In a medical malpractice action, a Superior Court judge abused his discretion in denying the emergency motion of the plaintiffs (whom a medical malpractice tribunal had determined had failed to raise a legitimate question of liability appropriate for judicial inquiry) to reduce the amount of the bond they were required to file under G. L. c. 231, § 60B, based solely on the judge's belief that the plaintiffs' attorney had agreed to advance or pay the plaintiffs' court costs and expenses of litigation, rather than on an evaluation of the reasonableness of the plaintiffs' continued pursuit of their claim, i.e., whether the plaintiffs had made a good faith effort to present a sufficient offer of proof at the tribunal and whether a litigant who was able to pay the bond would consider it important enough to obtain. [124-129]

CIVIL ACTION commenced in the Superior Court Department on May 7, 2009.

Following a hearing by a medical malpractice tribunal, a motion for reduction of bond was heard by *Timothy Q. Feeley,* J.

A proceeding for interlocutory review was heard in the Appeals Court by *James R. Milkey,* J. The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Elizabeth N. Mulvey* for the plaintiffs.

*Stephanie M. Simmons* for the defendant.

*John J. Barter,* for Professional Liability Foundation, Ltd., amicus curiae, submitted a brief.

GANTS, J. General Laws c. 231, § 60B (§ 60B), provides that "[e]very action for malpractice, error or mistake against a provider of health care shall be heard by a tribunal consisting of

---

[1] Jessica Faircloth, individually and as mother and next friend of Aaliyah Faircloth.

a single justice of the superior court, a physician licensed to practice medicine in the commonwealth . . . , and an attorney authorized to practice law in the commonwealth." Where a medical malpractice tribunal determines that there is not sufficient evidence to raise a legitimate question of a defendant's liability appropriate for judicial inquiry, "the plaintiff may pursue the claim through the usual judicial process only upon filing bond in the amount of [$6,000] . . . payable to the defendant or defendants in the case for costs assessed, including witness and experts fees and attorneys fees if the plaintiff does not prevail in the final judgment." *Id.* However, "[u]pon motion filed by the plaintiff, and a determination by the court that the plaintiff is indigent," the judge who participated in the tribunal "may reduce the amount of the bond but may not eliminate the requirement thereof." *Id.*

The issue on appeal is whether a judge may decline to reduce the amount of such a bond solely because he or she believes the plaintiffs' attorney is paying or advancing the court costs and expenses of litigation on behalf of the indigent client, including the cost of the bond. We conclude that this is not a factor that a judge may consider in deciding whether to reduce the amount of a medical malpractice bond under § 60B. Rather, we hold that, in exercising his or her discretion to determine whether or not to reduce the amount of such a bond, a judge should evaluate the reasonableness of the plaintiff's continued pursuit of the action by determining whether the indigent plaintiff "made a good faith effort to present an offer of proof sufficient to meet the directed verdict standard," *Denton* v. *Beth Israel Hosp.*, 392 Mass. 277, 281 (1984) (*Denton*), and "whether a [litigant] who is able to pay and was paying the expenses [herself], would consider the [bond] sufficiently important that [s]he would choose to obtain it." *Perez* v. *Bay State Ambulance & Hosp. Rental Serv., Inc.*, 413 Mass. 670, 678 (1992) (*Perez*), quoting *Commonwealth* v. *Lockley*, 381 Mass. 156, 160 (1980). Because the judge's denial of a reduction in the amount of the bond in this case was based solely on the judge's belief that the plaintiffs' attorneys were paying the plaintiffs' court costs and expenses of litigation, we conclude that he abused his discretion, and therefore we vacate his denial of the plaintiffs' motion for a reduction

of the bond and remand the matter to him for reconsideration consistent with this opinion.[2]

*Background.* The plaintiffs, Aaliyah Faircloth and her mother, Jessica Faircloth, brought a medical malpractice action against a number of defendants, including Dr. Louis DiLillo, who allegedly participated in Aaliyah's prenatal care. The plaintiffs alleged that the defendants' failure to recognize, report, or respond to a significant abnormality on an ultrasound examination performed on Jessica resulted in her daughter's severe and permanent personal injuries.

A medical malpractice tribunal was convened to evaluate the plaintiffs' offer of proof as to DiLillo's liability.[3] As part of their offer of proof, the plaintiffs submitted an opinion letter from Dr. Frederick A. Gonzalez stating that DiLillo "testified that it is his signature on the ultrasound report indicating he reviewed ultrasound images and documents," that DiLillo admitted that the alleged abnormality was present on such images, and that there was "no evidence that Dr. DiLillo alerted the [certified nurse midwife] to the [alleged abnormality] on the available images." According to this letter, it was Gonzalez's opinion that DiLillo "failed to practice in accordance with the accepted standards of care for obstetricians interpreting obstetric ultrasounds when he reviewed the study," and that, "[a]s a direct result, Aaliyah Faircloth's condition remained undiagnosed and untreated directly resulting in severe permanent injuries." Defense counsel argued that Gonzalez had mischaracterized DiLillo's deposition testimony and that DiLillo had declared in that testimony that the images were not sufficient to determine whether the alleged anomaly was present because the images were not obtained to assess the level of amniotic fluid.

---

[2]We acknowledge the amicus brief of the Professional Liability Foundation, Ltd.

[3]This was the second medical malpractice tribunal convened in this case. At the earlier tribunal, based at least in part on an opinion letter from Dr. Frederick A. Gonzalez, the tribunal determined that the plaintiffs' offer of proof provided sufficient evidence to meet the directed verdict standard as to defendants Beth L. Gosbee, a certified nurse midwife, and Amanda Medrzycki, a registered diagnostic medical sonographer. Because the plaintiffs later amended the complaint to add Dr. Louis DiLillo as a defendant, a subsequent medical malpractice tribunal was convened to consider his liability.

The tribunal determined that the plaintiffs had failed to raise a legitimate question of liability appropriate for judicial inquiry as to DiLillo. The plaintiffs then moved for a reduction of the bond they were required to file in order to continue pursuing their claim under § 60B from $6,000 to one hundred dollars. The judge, who had participated in the tribunal, found that the plaintiffs were indigent but concluded "that plaintiffs' indigency does not warrant the reduction of the statutorily set bond amount in this case." The judge reasoned:

> "Not having been informed otherwise, the court assumes that the indigent plaintiffs are not funding the expenses of this litigation. Thus, refusing to reduce the bond will not deprive the indigent plaintiffs of their claims against Di-Lillo. It will merely require plaintiffs' counsel to decide whether [their] view of the strength of this case warrants advancement of the bond amount, which will only be an actual (as opposed to temporary) expense of this litigation if plaintiffs do not prevail in the final judgment. Reducing the bond amount in this case, in reality, advantages only plaintiffs' counsel, which is not the designed purpose of the discretionary authority to reduce the amount of the bond. Moreover, it would deprive the defendants' malpractice insurer from having at least some portion of its considerable expenses of this litigation defrayed in the event, as the tribunal concluded, the case against DiLillo does not raise a legitimate question as to liability appropriate for judicial inquiry."

The judge noted:

> "If there was in fact no agreement by plaintiffs' counsel to advance costs and expenses, and plaintiffs had in fact paid the filing and service fees, as well as expert witness and other costs and expenses, and [were] obligated under the fee agreement to pay plaintiffs' counsel all fees and costs in advance or upon their accrual, *the court would exercise its discretion and reduce the bond amount*" (emphasis added).

The plaintiffs appealed from the judge's decision to a single justice of the Appeals Court, who reported for review by a full

panel the issue "whether a judge can consider the potential resources of counsel in determining whether to reduce the bond amount." We then transferred the appeal to this court on our own motion.

*Discussion.* The Legislature required all medical malpractice cases to be screened by a medical malpractice tribunal in an effort to "ensure the continued availability of medical malpractice insurance at a reasonable cost." *Paro* v. *Longwood Hosp.*, 373 Mass. 645, 647 (1977) (*Paro*). See *Little* v. *Rosenthal*, 376 Mass. 573, 577 (1978). The bond requirement of $6,000 imposed on plaintiffs whose offer of proof fails to convince the tribunal that they have a legally sufficient claim is designed to "deter frivolous suits" or "weed[] out groundless claims," *Denton, supra* at 280-281, because, if the bond is not paid within thirty days of the tribunal's finding, "the action shall be dismissed." G. L. c. 231, § 60B. However, § 60B also provides that, where a judge finds that the plaintiff is indigent, the judge may reduce but not eliminate the amount of the bond. The decision whether to reduce the amount of the bond is. left to the sound discretion of the judge; a finding that a plaintiff is indigent does not require the judge to reduce the amount of the bond. See *Denton, supra* ("bond requirement . . . cannot deter frivolous suits by indigents if they are entitled to have the bond reduced to an amount commensurate with their ability to pay"). "As long as the discretion is exercised without unreasonably prohibiting meritorious claims, no constitutional [due process] violation will exist." *Paro, supra* at 652-653. See *Denton, supra* at 280 ("statutory provision for reduction of bond is intended to avoid constitutional problems arising from denying to indigents access to the legal system").

To obviate the risk that a judge's exercise of discretion might violate due process, "the standard to be employed under § 60B" is "one of reasonableness, and looks to whether a [litigant] who is able to pay and was paying the expenses [herself]" would pay the full cost of the bond to prevent dismissal of the action. *Perez, supra* at 678, quoting *Commonwealth* v. *Lockley*, 381 Mass. 156, 160 (1980). "If a plaintiff declines to make an offer of proof, then the judge may assume that the plaintiff's claims are entirely frivolous," and without abusing his or her discre-

tion, the judge may refuse to reduce the amount of the bond or even increase it. *Denton, supra.* Where a plaintiff has made a good faith effort to present an offer of proof at the tribunal sufficient to meet the directed verdict standard, a judge may look to the merits of the plaintiff's case in deciding whether a litigant with the financial means to pay would expend her own funds to pay the full cost of the bond to avoid dismissal. See *Perez, supra.* Where a reasonable litigant with means would expend her own funds to pay the bond, a judge should reduce the amount of the bond to give an indigent plaintiff the same opportunity to proceed with the action, because otherwise the judge may "unreasonably burden" a potentially meritorious suit. *Paro, supra* at 655. See *Perez, supra.*

In *Perez,* we rejected the plaintiff's argument that "bonds never will be reduced if the merits of the case are evaluated after a tribunal's finding of insufficient evidence." *Id.* We recognize that a tribunal should only rule against a plaintiff where the plaintiff's offer of proof has failed to meet the directed verdict standard, that is, where that evidence, viewed in the light most favorable to the plaintiff, would be insufficient to permit a rational finder of fact to conclude that the defendant breached the standard of care and, by his breach, caused injury to the plaintiff. See *Denton, supra* at 279-280 (plaintiff must meet "directed verdict standard . . . in order to prevail at a tribunal hearing and proceed free of bond"). After such a finding by the tribunal, if the judge independently determines that a defendant at trial would be entitled to a directed verdict, the judge would have the discretion to refuse to reduce the amount of the bond because, regardless of financial means, no reasonable litigant would spend her money to pursue such a hopeless case. See *Perez, supra* at 678. There are at least two circumstances, however, where a judge reasonably may find that, despite the finding of the tribunal, a reasonable litigant with means would pay the full cost of the bond to avoid dismissal of the action.

First, the tribunal's finding is the finding of a majority of its members, and a judge may be in the minority in concluding that the plaintiff has satisfied the directed verdict standard. Because a tribunal finding need not constitute a *judicial* finding of the insufficiency of the evidence in the offer of proof, a judge

reasonably may reduce the amount of the required bond to protect the ability of an indigent plaintiff to proceed with what the judge independently finds to be a potentially meritorious action. Second, even where the judge agrees that the offer of proof *at the tribunal* was insufficient as a matter of law, there may be circumstances where a judge reasonably may conclude that the plaintiff's evidence *at trial* may be stronger than that which was presented at the tribunal, and that the evidence at trial may be sufficient to survive a defendant's motion for a directed verdict. In such a case, the judge may reduce the amount of the required bond because, despite some failure of the evidence at the tribunal, the plaintiff's claim may, in fact, be meritorious.

Here, the judge implicitly concluded both that the plaintiffs had made a good faith effort to present a sufficient offer of proof, see *Denton, supra* at 281, and that the plaintiffs' claim had enough merit that a reasonable plaintiff who could do so "would expend [his or her] own funds" in its pursuit, *Perez, supra* at 678, because the judge declared that he would reduce the bond amount if he learned that there was no agreement with the plaintiffs' counsel to advance or pay their court costs and expenses of litigation. Consequently, although the judge found that the plaintiffs were indigent, the judge essentially found that the plaintiffs should not be regarded as indigent where their counsel agreed to advance or pay their court costs and expenses of litigation, because the purpose of the bond reduction authority granted him by § 60B would not be served if he exercised such authority for an indigent plaintiff whose attorneys would actually be the persons risking the price of the bond should the case move forward.

We recognize that, under Mass. R. Prof. C. 1.8 (e), 426 Mass. 1338 (1998), an attorney may "advance" court costs and expenses of litigation for any client in civil litigation provided that repayment is contingent on the outcome of the matter, and may "pay" court costs and expenses of litigation for any *indigent* client in civil litigation. We also recognize that it is likely, albeit not certain, that an attorney representing an indigent client in a medical malpractice client will agree to advance or pay these costs and expenses. But we disagree with the judge that an attorney's agreement to advance or pay court costs and expenses of litigation is a relevant factor that may be considered in decid-

ing whether to reduce the amount of a medical malpractice bond.[4]

We note that the Legislature in G. L. c. 261, §§ 27A-27G, has set forth detailed procedures whereby a court may order that both "normal" and "extra" fees and costs in civil litigation be waived or paid by the court on behalf of an indigent party.[5] Under G. L. c. 261, § 27C (4), "[i]f the court makes a finding of indigency, . . . it shall not deny any request with respect to extra fees and costs if it finds the document, service or object is reasonably necessary to assure the applicant as effective a prosecution, defense or appeal as he would have if he were financially able to pay." The Legislature recognized that indigent parties in civil cases may be represented by counsel, because it authorized the clerk to receive "from any indigent party *or his attorney*" the bills and vouchers for extra fees and expenses that a court has ordered be paid by the Commonwealth. G. L. c. 261, § 27G. Yet, a party's representation by an attorney, including an agreement by that attorney to advance or pay court costs or expenses of litigation, is not relevant to whether a party is indigent under § 27A or to whether an indigent party is entitled to waiver or payment by the court of extra fees and costs under § 27C (4). Cf. S.J.C. Rule 3:10, § 1 (b), as amended, 416 Mass. 1306 (1993) (in determining whether party asserting right to appointment of public counsel is indigent for purpose of such appoint-

---

[4]The judge's order that the bond should not be reduced was based on his assumption, unsupported by the record, that "the indigent plaintiffs [were] not funding the expenses of this litigation." While this kind of unsupported assumption is likely erroneous in its own right, we do not rest our decision to vacate the order and remand the case on this error because we conclude that, even if the plaintiffs' fee agreement with their counsel explicitly stated that counsel would pay any bond imposed by the court pursuant to G. L. c. 231, § 60B, this factor cannot be considered by a judge in determining whether to reduce the bond.

[5]"Normal fees and costs" are defined in G. L. c. 261, § 27A, as "the fees and costs a party normally is required to pay in order to prosecute or defend the particular type of proceeding in which he is involved." "Extra fees and costs" are defined in the same section as "the fees and costs, in addition to those a party is normally required to pay in order to prosecute or defend his case, which result when a party employs or responds to a procedure not necessarily required in the particular type of proceeding in which he is involved," specifically including "the cost of . . . appeal bonds and appeal bond premiums."

ment, party's "available funds" may include "liquid assets and disposable net monthly income" of party's spouse, each of party's parents, or party's guardian); *Commonwealth* v. *Fico*, 462 Mass. 737, 740-748 (2012).

"We have said that a judge should follow the standards set out in G. L. c. 261, § 27A, in determining indigency under G. L. c. 231, § 60B." *Perez, supra* at 677-678, citing *Denton, supra* at 279 n.3. And our standard of "reasonableness" regarding the bond reduction determination under § 60B was adapted from the standard in G. L. c. 261, § 27C (4), for waiver or payment by the court of extra fees and expenses for an indigent party. See *Perez, supra* at 678, citing *Commonwealth* v. *Lockley*, 381 Mass. 156, 160 (1980). We held in *Perez, supra*, that "the procedures set forth in G. L. c. 261, §§ 27B-27D, should be followed in determining the practice under § 60B," noting that "[w]here two or more statutes relate to the same subject matter, they should be construed together so as to constitute a harmonious whole consistent with the legislative purpose." *Id.*, quoting *Board of Educ.* v. *Assessor of Worcester*, 368 Mass. 511, 513-514 (1975). Construing these related statutes together, we conclude that an attorney's agreement to advance or pay court costs or expenses of litigation is as irrelevant to the question whether the amount of bond should be reduced for an indigent plaintiff under § 60B as it is to the question whether an indigent party is entitled to waiver or payment by the court of extra fees and costs under G. L. c. 261, § 27C (4).

Additionally, while the judge asserted that "refusing to reduce the bond" would "merely require plaintiffs' counsel to decide whether [their] view of the strength of this case warrants advancement of the bond amount," we recognize that the consequences of such a ruling would be far more complex and potentially adverse to indigent parties. Because the failure to post the required bond would result in the dismissal of the case, the decision whether to post bond properly belongs to the client, who is entitled to make informed decisions about the litigation, not the attorney. See generally Mass. R. Prof. C. 1.2 (a), 426 Mass. 1310 (1998) ("A lawyer shall seek the lawful objectives of his or her client through reasonably available means permitted by law and these rules"). Allowing judges to consider the financial

arrangement between attorneys and their indigent clients in determining whether to reduce the amount of the bond required by § 60B could put such attorneys at odds with their clients in circumstances where indigent clients seek to pursue their medical malpractice claims even after an adverse finding from the tribunal, because attorneys would then be forced to either risk the full cost of the bond themselves or attempt to withdraw from the representation. Because this risk would likely arise only in the representation of indigent clients, it might weigh in an attorney's decision whether to represent an indigent client in a medical malpractice claim, potentially diminishing the willingness of attorneys to take such cases and thereby diminishing indigent medical malpractice plaintiffs' access to the legal system, which is precisely the danger the bond reduction authority in § 60B is intended to avoid. See *Denton, supra* at 280. Cf. *Kiley, petitioner*, 459 Mass. 645, 654 (2011), quoting G.C. Hazard, W.W. Hodes, & P.R. Jarvis, Law of Lawyering § 20.9, at 20-23 (3d ed. 2001 & Supp. 2005) (because "lawyer's miscalculation of the time or resources necessary to represent a client, the likelihood of success, or the amount of damages 'is usually a dubious ground' for withdrawal, . . . [a]ttorneys who agree to represent clients on a contingent fee basis must choose their cases carefully").

Finally, because a judge should not simply assume that the attorney for an indigent plaintiff in a medical malpractice claim is financially able to pay the full amount of the bond, if judges were permitted to consider the financial means of attorneys in determining whether to reduce a bond, they would need to face the impractical and potentially daunting challenge of examining and evaluating the finances of the attorney or the attorney's law firm. In short, we are convinced that, if an attorney's agreement with an indigent client to advance or pay court costs or expenses of litigation were deemed relevant to a bond reduction determination under § 60B, it would create significantly more problems than it would solve.

*Conclusion.* Because the judge here denied the plaintiffs' emergency motion to reduce the amount of the bond based solely on his belief that the plaintiffs' attorneys had agreed to advance or pay the plaintiff's court costs and expenses of litiga-

tion rather than on his evaluation of the plaintiffs' effort to present a sufficient offer of proof at the tribunal or the reasonableness of the plaintiffs' continued pursuit of their claim, the judge based his determination on a legally erroneous standard and thus abused his discretion. We therefore vacate the denial of the plaintiffs' emergency motion to reduce the amount of the bond, and we remand the matter to the judge for reconsideration of this motion consistent with this decision.

*So ordered.*